Stephen E. Durkin, Appellee, v. Elgin, Joliet and Eastern Railway Company, and United States Steel Corporation, Appellants.

**Gen. No. 46,834.**

First District, Third Division.
November 28, 1956.
Rehearing denied January 7, 1957.
Released for publication January 8, 1957.

Stevenson, Conaghan, Velde and Hackbert, all of Chicago, for appellants; Harlan L. Hackbert, Dean A. Olds, of counsel.

James A. Dooley, of Chicago, for appellee.

JUDGE KILEY delivered the opinion of the court.

This is a personal injury action joining a count, under the Federal Employers' Liability Act against defendant Railroad, with a common law count against defendant Steel Company. Verdict and judgment were for plaintiff for $50,000. Defendants have appealed.

The accident occurred December 3, 1952, in the Steel Company's Gary yard upon an elevated railroad way called the "highline." The "highline" runs north and

south along the east side of the Steel Company's twelve blast furnaces which extend about a quarter of a mile. Four tracks are on the "highline" and, from east to west, are known as the "transfer or larry," the "stone," the "coke," and the "storage" tracks. Beneath the tracks are bins in which is stored the ore and other materials for the furnaces. Between the tracks is a heavy open grating, covering the bins, through which the raw material is dumped from the railroad cars. The openings in the grating are about large enough for a man to "put both feet through," but too small for a man to fall through into the bins. On the west side of the stone track is a wooden catwalk and on the east side near the transfer track is a "third rail" to supply power for the larry cars.

The bins are stored with material shipped to the mill by boats and by train. The boats in the dock, east of the "highline," are unloaded by means of seven cranes, located along the east side of the "highline" and rising above it about 120 feet, using clam buckets moving from east to west. Customarily the buckets load self-operating larry cars on the transfer or larry track which carry the material to the bins. At times when the transfer track is under repair the cranes dump the material directly through the grill work. This was true on the day plaintiff was injured, a crane was dumping material in the southernmost bin.

Railroad movements onto the "highline" begin at grade to the southwest and move upward on an inclined curve, the crest of which is 320 feet south of the southernmost bin. Warning bells and flashers warn those on the "highline" of the approach of trains.

Plaintiff was employed by the Railroad as a switching foreman. He was injured when a "hopper" car on which he was riding collided with a clam bucket being moved above the tracks by an overhead crane. He was riding on the front of the first car of a twenty-six car

train which was being pushed by diesels toward the furnace storage bins. In escaping the collision, plaintiff swung to the corner of the car, to the stirrup and a side grab iron. He attempted without success to operate the air brake, tried to step down to the catwalk, lost his footing, and while hanging on to the grab iron was dragged about 120 feet over the rough grating between the catwalk and tracks and was injured.

Plaintiff alleged, among other things, that the Railroad was negligent in failing to furnish him a safe place to work. The jury returned with the general verdict for plaintiff and a special verdict that the Railroad's negligence contributed forty per cent to the accident. The Railroad contends there was insufficient evidence of negligence on its part to take the case to the jury or to support the general or special verdict, and that plaintiff's own negligence was the sole cause of his injury.

The Illinois Supreme Court recently stated in Hall v. Chicago & North Western Ry. Co., 5 Ill.2d 135, 143–44, that contributory negligence was no defense in an F. E. L. A. suit and if there was any evidence in the record from which a jury could conclude that defendant's negligence contributed to the plaintiff's injury, a court would err in granting a motion for judgment notwithstanding the verdict. The evidence we consider on the Railroad's contention is that favorable to plaintiff together with the reasonable inferences therefrom which tend to support his case. (Wilkerson v. McCarthy, 336 U. S. 53, 57; Pitrowski v. N. Y., Chicago & St. L. R. R. Co., 4 Ill.2d 125.) Only where there is a complete absence of probative facts tending to show negligence should the court take the question from the jury. Pitrowski v. N. Y., Chicago & St. L. R. R. Co., 4 Ill.2d 125; Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 191 F.2d 302.

The evidence favorable to plaintiff is that at the time of the occurrence the railroad movement involved was not his regular work; that he had experience only of the cranes operating with the larry cars and had never seen the direct crane dumping; that he was not informed before the start of the movement that the direct dumping was in progress; that he was riding in the customary way on the front car standing on the drawbar of the coupler to perform his duty of watching for obstructions on the track; that ordinarily there was an extra man on the "highline" during the direct dumping method to assist the crane operator in doing this work safely; that on the day of the accident no extra man was on the job; that the train plaintiff was riding crossed over the crest slowly and picked up speed on the downgraded "highline" and was going about 15 miles per hour as it neared the southernmost bin; that the crane bucket had been raised above the tracks as the train approached and "for some unknown reason" dropped down again to collide with the train; and that plaintiff did not observe the bucket until he was 25 feet away when it came down "like a dive bomber."

██ It is our opinion that this evidence was sufficient to take the case to the jury on the question of the Railroad's negligence in failing to furnish a safe place to work. The Railroad's duty to furnish a safe place to work cannot be laid upon the Steel Company even though the injury was suffered on the Steel Company's property. (Porter v. Terminal Railroad Ass'n, 327 Ill. App. 645; Atlantic Coast Line R. Co. v. Robertson, 214 F.2d 746.)

█ The Railroad's trainmaster, plaintiff's superior, was on the "highline" for several hours before the accident and knew of the direct dumping process whenever the transfer track was under repair as it was this day. The jury could infer that the absence of

194

the extra man helping the crane operator should have been apparent to the trainmaster and that the Railroad should have made the "highline" safe by seeing that the extra man was supplied, or by supplying one. (Pitrowski v. N. Y., Chicago & St. L. R. R. Co., 4 Ill.2d 125, 130.) Plaintiff was in control of the train movement but this is not conclusive for he was not in control of the crane and clam bucket which made his place of work unsafe. We think the question of a safe place to work was for the jury. It follows that the court did not err in instructing on the question of a safe place to work, and we see no abuse of discretion in failing to give more than one of the Railroad's instructions on the subject.

Whether plaintiff's failure to operate the air brakes was the sole element of negligence was also a jury question. The jury had plaintiff's testimony of his riding in the customary place and his unsuccessful attempt to operate the brakes.

There is no merit in the Railroad's contention that plaintiff as a matter of law should have seen the clam bucket 200 or 300 feet south of the place of the accident. He says he did not see the bucket until he was 25 feet away. Others say the bucket had been raised before it suddenly dropped and accordingly had plaintiff looked he might have seen only the raised bucket with no duty to expect that it would be suddenly dropped on him. This was evidence from which the jury could also infer that plaintiff, occupied in seeing that no slag or workmen were on the tracks, was not imprudent in not seeing the raised clam bucket.

Even though the trainmaster or other of defendant's employees may not have been in position at the time of the accident to see the hazardous proximity of the crane, the Railroad knew or should have known of the direct dumping operation which rendered train movements unsafe. It knew also of the custom of

having an extra man helping the crane operator. While the Railroad could not control the Steel Company's conduct it could, as we have already noted, have supplied its negligent deficiencies endangering the Railroad's employees. While plaintiff may have been required to expect the crane operation loading larry cars, the larry track was out of operation and since he had no knowledge of the direct dumping procedure he should not be expected to anticipate it.

We think that Starck v. Chicago & North Western Ry. Co., 4 Ill.2d 611, is not applicable since the question whether a place rendered temporarily unsafe by another's negligence is within the "safe place to work rule" was "not squarely presented" in that case. The case of Pitrowski v. N. Y., Chicago & St. Louis R. R. Co., cited hereinabove, is in the same volume at page 125 and is applicable.

Defendant's principal reliance is upon Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 191 F.2d 302, decided in the 7th Circuit in 1951. That case is cited to the contention that if there was negligence in failing to stop the train movement before the accident, the sole negligence was plaintiff's. In the Wetherbee case the judgment for plaintiff was reversed and the case remanded, but the Court found no negligence of the railroad in failing to furnish a safe place to work. (Second appeal, 204 F.2d 755.) There the railroad was not responsible for the plank being where it was to cause derailment, just as the Railroad in the instant case was not responsible for the clam bucket being operated so as to collide with the train. But we cannot say here that the clam bucket could have been seen by "anyone looking down the track in its direction" as the Circuit Court said of the plank on the track in the Wetherbee case. Furthermore, as we have indicated, even if plaintiff saw the bucket lifted above the tracks he need not have anticipated it would suddenly descend

196

on him "for no reason." Also, the plank in Wetherbee was a "new threat" and the section foreman had not been on the "premises" that day. But here, the train-master had been on the "highline" and the company knew or should have known of the absence of the extra man and thus if the threat was new it was one that the Railroad could have removed. These circumstances differentiate the factual situations in the Wetherbee case and this case.

The case of Killian v. Pennsylvania R. R. Co., 336 Ill. App. 152, cert. denied, 338 U. S. 819, is also distinguished on the facts. There plaintiff saw the dangerous condition, instructed the Mallory Company employee to move certain barrels, and thereafter, though standing only ten or twelve feet away, did not look to see whether the barrels had been moved. And in the absence of testimony, questions of negligence of other railroad employees would require indulging in "speculation." There was no negligence on the part of the railroad and Killian's contributory negligence was held to be the sole proximate cause as to the Mallory Company.

Defendants complain of error in the admission of testimony, and instructing the jury with respect to damages. The defendants do not complain that the verdict is excessive and the medical testimony is not abstracted for our consideration. We cannot decide, therefore, whether defendants were harmed or prejudiced by the alleged errors. We cannot tell whether the instruction complained of allowed "double or even triple" recovery. There is no basis for the complaint made.

The Steel Company admits there is sufficient evidence of its negligence to take the case to the jury, but contends that plaintiff was guilty of contributory negligence as a matter of law, thereby relieving the Steel Company of any liability. However, in view of our

197

conclusion that the question of plaintiff's due care was for the jury, it follows that the verdict as to the Steel Company is proper.

For the reasons given, we see no reason for disturbing the special and general verdicts. The judgment is affirmed.

Affirmed.

FEINBERG, P. J. and LEWE, J., concur.