349 P.2d 678

Jack NICHOLS and E. C. McReynolds, Plaintiffs-Appellants and Cross-Appellees,

v.

John SEFCIK and Callie Sefcik, Defendants-Appellees and Cross-Appellants.

No. 6583.

Supreme Court of New Mexico.

Feb. 26, 1960.

450

Emmett C. Hart, Tucumcari, for appellants.

Rowley, Breen & Bowen, Tucumcari, for appellees.

MOISE, Justice.

This is an action commenced by Jack L. Nichols and E. C. McReynolds to recover a commission from the defendants John and Callie Sefcik for producing a customer to whom the defendants sold the Circle S Motel owned by them in Tucumcari.

The action was dismissed on motion as to the plaintiff McReynolds on the ground that he was not a licensed real estate broker under the laws of New Mexico, and was accordingly barred from bringing the action.

The case proceeded as between plaintiff Nichols and the defendant and was tried to a jury resulting in a verdict for defendants.

Both plaintiffs appeal and defendants have filed a cross-appeal complaining of certain rulings of the court during the trial.

The pertinent facts stated as briefly as possible follow. Plaintiff Nichols was a resident of Tucumcari, New Mexico, and had engaged in the real estate business there since January 12, 1952, at which time he was licensed as a real estate salesman. He was continuously so licensed until November 9, 1956, when he was licensed as a real estate broker. In 1954, while employed as a real estate salesman by Quay County Abstract Company, Nichols obtained a listing from the defendants on the Circle S Motel. This listing was on a letterhead of the motel, contained a description of the property and the terms upon which a sale could be made and was signed by defendants. In the handwriting of plaintiff Nichols there also appeared the words "5% commission listing to Jack L. Nichols." There is considerable discrepancy in the record as to when the quoted words were placed on the listing, and whether it was before or after it was signed by defendants, and whether it was with the knowledge and consent of defendants.

Some time in 1957, the defendants having made additions and improvements to the property, plaintiff Nichols was advised by defendants that the price for the property was now raised to $300,000.

Plaintiff Nichols left the employ of Quay County Abstract Company, and after being licensed as a real estate broker he went into business for himself. When he left Quay County Abstract Company he took the listings he had obtained including the one in controversy. This was agreeable to his employers.

Plaintiff McReynolds is a resident of Amarillo, Texas, and is a licensed real estate broker in Texas, but has no license in New Mexico.

On September 23, 1957, plaintiff McReynolds contacted plaintiff Nichols concerning some prospective customers for a motel that he wanted to bring over to Tucumcari. Plaintiff Nichols made reservations at the Circle S Motel for plaintiff McReynolds and his customers, Don Parker and Ken Dunlap. There is some dispute in the evidence as to whether plaintiff Nichols advised the prospects when he first met them that he had a listing on the motel where they were staying. After staying one night plaintiffs Nichols and McReynolds took the prospective customers to Las Cruces and showed them two motels and then to Alamogordo and showed them one. Plaintiff Nichols then phoned back to the Circle S in Tucumcari and again made reservations for the prospects.

The next day, in the presence of defendant John Sefcik, the plaintiff Nichols told Don Parker he could buy the Circle S for $300,000, or three times the gross, whereupon Mr. Sefcik said, "Jack, don't make it any worse than it is. It's three and one-half times the gross." Plaintiff McRey-

nolds and the prospects looked over some units at the Circle S and then returned to Amarillo.

Plaintiff Nichols obtained a listing on another motel in Tucumcari known as the Golden W Motel, and advised plaintiff McReynolds, who passed the information on to Mr. Parker and Mr. Dunlap, who on October 12, 1957, returned to Tucumcari without plaintiff McReynolds and without advising plaintiff Nichols. They looked at the Golden W Motel and then went to the Circle S Motel. On October 15, 1957, plaintiff Nichols went to the Circle S Motel and there found defendant John Sefcik, Mr. Parker and Mr. Dunlap apparently taking an inventory. When plaintiff Nichols asked about his commission, defendant Sefcik replied that he did not have a listing. Plaintiff Nichols said he did and the defendants Sefcik said it was forged. Later, upon being shown the listing the defendants claimed it had been revoked.

On October 15, 1957, defendants entered into a contract of sale for the property to Mr. and Mrs. Dunlap for a price of $295,-000.

The first error claimed to have been made by the court arose out of the ruling that plaintiff McReynolds, not being licensed in New Mexico, could not bring an action for a commission in the courts of New Mexico.

He bases his contention upon the claim (1) that all of the purposes of the act are accomplished by having a licensed New Mexico broker associated in the transaction; (2) on the language of Rule 12 of the Rules and regulations of the Real Estate Board which reads as follows:

"No licensed broker shall pay a commission or any part thereof for performing any of the acts specified in this act to any person who is not a duly licensed broker or a licensed salesman in the State of New Mexico, or who is not regularly licensed as a real estate broker or a real estate salesman in any other state having enacted a real estate license law or who is not regularly engaged in the business of a real estate broker in any state not having enacted a real estate law acceptable to this board."

and (3) on an asserted analogy between the situation of these two brokers and a local attorney being associated in a case in court in this state with an attorney licensed in another state, but not in New Mexico.

The basis for the court's ruling is § 67–24–15, N.M.S.A.1953, which reads as follows:

"No action for the collection of commission or compensation earned by any person as a real estate broker or salesman required to be licensed under the provisions of this act (67–24–1 to 67–24–18) shall be maintained in the

courts of the state unless such person was a duly licensed broker or salesman at the time the alleged cause of action arose."

Real estate broker and real estate salesman are defined as follows:

"A real estate broker within the meaning of this act (67–24–1 to 67–24–18) is any person, firm, partnership, copartnership, association or corporation, who for a salary, fee, commission or valuable consideration lists, sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or rents or offers for rent, any real estate for the improvements thereon for others, as a whole or partial vocation. The term 'real estate' as used in this act shall include leaseholds and other interests less than leaseholds.

"A real estate salesman within the meaning of this act is any person who for a compensation or valuable consideration is employed either directly or indirectly by a real estate broker, in the pursuance of his business, as a whole or partial vocation." N.M.S.A. 1953, § 67–24–2.

█ It would appear that generally a person who makes an isolated sale or participates in a casual transaction is not considered to be a real estate broker under statutes placing restrictions on the practice. See note in 56 A.L.R. 486 and 167 A.L.R. 783.

In the case of Haas v. Greenwald, 196 Cal. 236, 237 P. 38, 41, 59 A.L.R. 1493, the Supreme Court of California held that no commission could be recovered on the one and only transaction of the plaintiff where their statute had a special provision concerning a single transaction. The analysis and disposition of this argument is fully set forth in the following quoted from that case:

"It is, however, contended by the appellant herein that conceding that A. M. Johnson did act in the part he took in said negotiations in the capacity of a real estate broker, his action in so doing was only in a single though twofold transaction, and not in a course of business as a real estate broker, and hence that the inhibitive provisions of said act do not apply to him. This argument, with the authorities which are cited in support of it, might have some cogency but for the express and unmistakable terms of the statute to the contrary. The language of the concluding clause of section 2 of the act is as follows: 'One act, for a compensation, of buying or selling real estate of or for another, or offering for another to buy or sell or exchange real estate, or negotiating a loan on or leasing or renting or plac-

454

ing for rent real estate, or collecting rent therefrom shall constitute the person, copartnership or corporation making such offer, sale or purchase, exchange or lease, or negotiating said loan, or so renting or placing for rent or collecting said rent a real estate broker within the meaning of this act.'

"The particularity with which this clause in said act is phrased leaves no room for any other interpretation than that which its plain terms import, and which are not rendered uncertain by any other phrase or clause which said section of said act or which act as a whole contains. The authorities cited in support of the appellant's position in this regard do not sustain it for the reason, as is well illustrated by the case of Miller v. Stevens, 224 Mich. 626, 195 N.W. 481, mainly relied upon by appellant, that the statute under review in said decision omitted this very provision which our statute contains, rendering a single act of the character defined, for a compensation, sufficient to constitute the person performing it a real estate broker."

In Young v. Kidder, 33 N.M. 654, 275 P. 98, this Court held under a statute requiring real estate brokers to be licensed and to pay an occupation tax, that failure to do so did not bar one who made an isolated sale from collecting a commission thereon. Admittedly, the law then dif-

fered materially from our present law. However, the law in effect when this transaction took place is very like the California law, except for the specific provision as to a single transaction, and very similar to the statute in Michigan discussed in Miller v. Stevens, 224 Mich. 626, 195 N.W. 481, and in other states included in the A.L.R. citations, supra.

Be all this as it may, we are somewhat at a loss to understand plaintiffs' complaint. The case was submitted to the jury on the question of whether or not plaintiff Nichols was entitled to the full commission. No question was raised about his being the real party in interest. Also, this being a suit on a contract allegedly entered into between plaintiff Nichols and the defendant in writing, as indeed it must have been to support a recovery under the statute (§ 70–1–43, N.M.S.A. 1953; also see Traub v. Nason & Childers, 57 N.M. 473, 260 P.2d 379) how were either of the plaintiffs prejudiced by the court's actions? We conclude that if he erred, it in no way prejudiced plaintiffs, or either of them and accordingly would not be grounds for reversal in this Court. See In re Englehart's Estate, 17 N.M. 299, 128 P. 67, 45 L.R.A.,N.S., 237; Goldenberg v. Law, 17 N.M. 546, 131 P. 499; Edwards v. Peterson, 61 N.M. 104, 295 P.2d 858.

Plaintiffs' second point arises out of the refusal of the trial court to admit in evidence letters which passed between plain-

tiff Nichols and plaintiff McReynolds, all showing the efforts being made by them to effect the sale. They argue that if the letters were not admissible to show the truth of their contents, that at least they should have been received to show the parties were writing back and forth.

Objection was made to the admission of the letters on the ground they were hearsay so far as the defendants were concerned. In sustaining the objection we are. of the opinion the court ruled correctly.

As stated by Jones in his work on Evidence, § 335 (5th Ed., 1958):

"Manifestly it would be unsafe if, without restriction, parties to litigation were allowed to support their claims by proving their own statements made out of court. Such a practice would be open not only to all the objections which exist against the admission of hearsay in general, but would also open the door to fraud and to the fabrication of testimony."

See also § 632, Jones on Evidence (5th Ed., 1958).

■ In 12 C.J.S. Brokers § 113, p. 274, the following is stated:

"Self-serving declarations, regardless of their relevancy or materiality, are incompetent, as shown in the C.J.S. title Evidence § 216, also 22 C.J. p. 220 note 26—p. 231 note 77."

The following cases support the rule and are in point: Electric Products Co. v. St. Louis Theater Supply Co., St. Louis Court of Appeals, Mo.1925, 273 S.W. 135; McCue v. Schweer, 221 Mo.App.1029, 295 S.W. 816; Gold v. Marshall, 1927, 260 Mass. 492, 157 N.E. 699.

In the case of Massachusetts Bonding &. Ins. Co. v. R. E. Parsons Elec. Co., 8 Cir., 61 F.2d 264, 92 A.L.R. 218, it was held that correspondence between principal and agent was not admissible as being self. serving and hearsay. Under somewhat different circumstances this Court in the case of Martin v. New York Life Ins. Co., 30 N.M. 400, 234 P. 673, 40 A.L.R. 406, held it was error for the court to admit a letter from defendant addressed to plaintiff's decedent containing self serving declarations, when objected to by plaintiff.

■ We find it difficult to imagine a more obvious situation than one such as is here present for manufacturing evidence helpful to plaintiffs. They were working together, and if they could build up evidence merely by corresponding back and forth, and without the defendants' knowledge, there would be no restraints upon them whatsoever except only those imposed by their own honesty and good faith. The law has not seen fit to permit such evidence admitted and thus would overcome any temptation to manufacture evidence of this type. That it should be otherwise, we certainly are not prepared to say.

Appellants next complain of the court's refusal to admit in evidence a financial statement of the defendants for the purposes of impeachment and as an admission against interest.

The defendants' accountant was placed on the stand and identified certain documents as having been prepared by him. Included among these papers was a financial statement setting forth the assets owned by defendants, their liabilities and their net worth as of December 31, 1957. Their income tax return for the year 1957, showing as one item of expense in connection with the sale of the motel an item of $15,000 commission, was identified and admitted in evidence, with all supporting exhibits. However, upon objection the financial statement was excluded.

It is plaintiffs' theory that somehow the reduction in the price of the court from $300,000 to $295,000, which was the sale price shown on the tax return and in the contract of sale, plus $10,000 which it was testified was loaned or to be loaned to the purchasers by the defendants totaled $15,000, was in effect a reduction in price in an amount equal to the commission as shown on the tax return. The financial statement admittedly did not show any indebtedness of $10,000 owing to the defendants, which they explain by saying the money had not been advanced as of that date. Also, the commission item in the tax return is explained as being proper as a contingent indebtedness since the defendants reported their taxes on an accrual basis.

Inasmuch as the accountant testified that no $10,000 indebtedness appeared on the financial statement, we do not perceive that plaintiffs were prejudiced by the court's refusal to admit the statement. It would have served no useful purpose and would have been prejudicial to the defendants to have evidence of their other assets not involved in the litigation and their net worth go before the jury. This certainly had nothing to do with the merits of the litigation and could very well have given the jury something entirely extraneous for their consideration in arriving at a verdict. See 20 Am.Jur. 250, "Evidence" § 259. Its exclusion was not error.

Plaintiffs' fourth and last point relied on for reversal results from the court's refusal to allow plaintiff McReynolds to testify concerning contradictory statements made to him by the witness Hutchens.

This witness, at the time of the trial, was associated with plaintiff Nichols in the real estate business, and testified that he kept the records in the office, including the listings and that there had never been a listing in the office on the Circle S. Motel. On cross-examination he was asked if he had ever discussed the transaction with plaintiff McReynolds. The witness denied ever discussing the case with Mr. McReynolds in Tucumcari or Amarillo or that

he had told Mr. McReynolds that the defendant "quoted this price of 300 thousand."

Thereafter, Mr. McReynolds was placed upon the stand and was asked whether or not he had certain conversations with the witness Hutchens both in Tucumcari and in Amarillo and to state the substance of the conversations. The court ruled that he could say whether or not he had the conversations, but could not detail the substance of these conversations. This is the ruling asserted to be erroneous.

We have a statute which reads:

"If a witness, upon cross-examination as to a former statement made by him relative to the subject-matter of the cause, and inconsistent with his present testimony, does not distinctly admit that he did make such statement, proof may be given that he did in fact make it, but before such proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and *he must be asked whether or not he did make such statement.*" § 20-2-2, N.M.S.A. 1953. (Emphasis supplied).

■ In order to impeach a witness for prior inconsistent statements it thus appears there must first be a foundation laid of the time, place and details of the statement in the examination of the witness being impeached. In the instant case even the time and place were not too definitely fixed on the cross-examination, but the court ruled that the impeaching witness could be asked about the claimed occasion which had been denied by the witness. However, the witness being impeached had not been asked whether or not at the time and place in question he had said certain things, excepting only the single statement quoted above, and where counsel for plaintiffs merely asked Mr. McReynolds to relate what was said without asking him directly if the specific statement inquired about had been made, the court excluded it. That the court properly ruled cannot be open to question.

■ However, plaintiffs would avoid the effect of the statute by stating that since the witness denied making any statement there was no necessity of stating the specific language it is claimed he had used. With this we do not agree. The rule is intended as a protection to the witness not the parties. State v. Carabajal, 26 N.M. 384, 193 P. 406, 17 A.L.R. 1098. Possibly, if the statement had been related to the witness he would have recalled it, or could have explained. However, if his mind is not alerted to what it is claimed he said, it is entirely possible that he might have forgotten it. Also, to permit the impeaching witness to freely state anything that he claims to recall would in effect open the doors to statements never before made or claimed to have been made and

would throw down all bars of restraint. See annotation in 16 A.L.R. 984.

Since we do not find any of the claimed errors to have any merit it is not necessary for us to consider the cross-appeal.

For the reasons stated, the judgment of the trial court will be affirmed.

It is so ordered.

CARMODY, J., and GEO. T. HARRIS, D. J., concur.

McGHEE, C. J., and COMPTON, J., dissent.