Kepple ROLAND et al., Appellants,

v.

Sid BECKHAM et al., Appellees.

Nettie HUGHES et al., Appellants,

v.

Jerry JONES et al., Appellees.

Court of Appeals of Kentucky.

Nov. 23, 1966.

**630**

Charles E. Carter, Owenton, William A. Carter, Bedford, for appellees Glen Cox, Mary Burke, Robert Burke, Johnny Hammond, Herschel Hensley, Bobby Lusby, Jerry Jones, Donnie Marksberry, Mike Keith, Careyon Sipple, Kathy Smither, Jerry Thornton, Phillip Trinkle.

John J. Blackburn, Covington, for appellee Gary Smith.

Herbert C. Howard, Louisville, for appellee Bonnie Barbour New.

William E. Johnson, Frankfort, for appellees R. W. and Mary Riddle.

William E. Wehrman, Wehrman & Wehrman, Covington, for appellee estate of Claude Ferrell.

DAVIS, Commissioner.

These consolidated cases arise from an accident which occurred in Owen County in which a school bus and an automobile were involved. There were two trials of the cases in circuit court. The jury's verdict in the first trial was in favor of the twenty-one students who were passengers on the bus against the owner and driver of the automobile and against the owner of the school bus and his lessee, Board of Education of Owen County (hereinafter the bus interests). The same jury's verdict made an award against the owner and operator of the automobile in favor of the estate of the school bus driver, who died as the result of injuries sustained in the accident. The trial court set aside the verdicts rendered in the first trial on a finding that they were excessive; a new trial was ordered at which only the issue of damages was submitted. The second trial resulted in verdicts less than those returned at the first trial. These appeals present numerous assignments of error which shall be stated herein, after a preliminary recitation of the factual background.

On February 25, 1963, a school bus owned by Kepple Roland, driven by Claude

James W. Shepherd, Carrollton, for appellants Nettie and Danny Hughes.

James C. Ware, Covington, William G. Reed, Carrollton, for appellants Kepple Roland and Board of Education of Owen County.

James P. Hanrahan, Hafford E. Hay, Frankfort, for appellees Sid and David Beckham.

John M. Berry, Sr., John M. Berry, Jr., Donald K. Floyd, New Castle, for appellees Beverly Nell Bell and Billy Jo Beverly.

Ferrell, and under contract with the Board of Education of Owen County for transportation of pupils was being driven eastwardly on Kentucky Highways 22 and 227 en route to the Owen County High School. There were twenty-two pupils aboard the bus. The highway was wet from recent snow, although it appears that there was no appreciable accumulation of snow on the roadway proper.

When the bus was about a mile and a half east of Owenton a Thunderbird car, driven by seventeen-year-old Danny Hughes, also a pupil at Owen County High School, overtook the school bus and passed it. There is contrariety in the evidence (as disclosed at the first trial) as to whether there was any collision between the car and the bus as the car was passing the bus. In any event, the car passed ahead of the bus and ran off the road to its right. The bus veered to its right, just after the car passed, and the front portion of it crashed into a tree just off its right side of the highway. The left rear wheels of the bus remained on the extreme right side of the road after the bus had come to rest against the tree.

The insurance company carrying the liability coverage on the Hughes car precipitated the lawsuit by filing a complaint naming as defendants all of the potential claimants, asking that all of them be required to set up their claims. One of the students made no claim; the others filed claims, as did the personal representative of the estate of Claude Ferrell, the bus driver.

### THE APPEAL RELATING TO THE BUS INTERESTS

Judgment went against the appellants, Kepple Roland (owner of the school bus) and the Board of Education of Owen County, jointly and severally, along with Nettie Hughes (owner of the Thunderbird) and her son, Danny, driver of the car. On this appeal Roland and the Board of Educa-

tion present the following grounds upon which they consider themselves entitled to a reversal of the judgments against them: (1) Error in excluding evidence of a statement made by Claude Ferrell; (2) the driver of the school bus was guilty of no negligence; (3) plaintiffs were permitted to inject the fact that appellants were covered by liability insurance; (4) there was no evidence of probative value showing any negligence of appellants; (5) verdicts in favor of the bus passengers against the owner and operatives of the bus are inconsistent with the jury's verdict awarding damages to the estate of Claude Ferrell, the bus driver.

The first point advanced by appellants Roland and the Board of Education relates to the court's refusal to admit evidence of a statement made by Claude Ferrell, the bus driver, shortly after the accident. The statement, as purportedly made to witness William DeWitt, Director of Pupil Personnel for the Board of Education of Owen County, was placed in the record by avowal. In relating the incident, the witness had said that he approached the school bus as it was at rest against the tree, before any of the pupils had gotten out of the wrecked bus, and that Ferrell made a statement to him:

"Q.45  What did he [Ferrell] say concerning the bus?

A.  I asked him first how he was and he said he was pinned to the bus and that his leg hurt him. I said 'What happened to you, Claude?' and he said 'He hit me and knocked me over here,' and nodded toward the car in the field.

Q.46  Did you see the car in the field toward which Claude Ferrell nodded at that time?

A.  Yes, that was the first time I had seen the car in the field.

*Q.47* What kind of a car was it, if you know?

A. It was a Thunderbird. A fairly new model."

Other testimony of the witness lends support to the fact that the foregoing statement of Ferrell was made within less than five minutes after the accident occurred. Appellants Roland and Board of Education urge that the statement made by Ferrell was admissible as part of the *res gestae,* and cite Ison v. Mullins, Ky., 336 S.W.2d 599 in support of their contention. The appellees counter by calling attention to Honaker v. Crutchfield, 247 Ky. 495, 57 S.W.2d 502, and Cumberland Gasoline Corporation v. Fields' Adm'r, 258 Ky. 417, 80 S.W.2d 28. For appellees it is urged that Ferrell's statement was in response to interrogation, and thus lost its spontaneity.

Whether a particular statement may be admissible as a *res gestae* exception to the hearsay rule has arisen many times in this and other jurisdictions. The general rules are fairly well established, but their application in particular cases raises difficulties, as is to be seen from the many texts and court opinions on the subject. In Preston and Caldwell v. Commonwealth, Ky., 406 S.W. 2d 398 (decided June 10, 1966) is found a recent exposition of the factors to be considered when testing the admissibility of a claimed *res gestae* statement. It is particularly noteworthy that spontaneity, as opposed to mere proximity in time, is a most important consideration. Some of the elements which may point to lack of spontaneity are: " * * * lapse of time between the main act and the declaration, the opportunity or likelihood of fabrication, the inducement to fabrication, the actual excitement of the declarant, the place of the declaration, the presence there of visible results of the act or occurrence to which the utterance relates, whether the utterance was made in response to a question, and whether the declaration was against interest or self-serving." 31A C.J.S. Evidence § 419, p. 1029.

There is no doubt that the quoted statement qualifies as to time and place. That it is self-serving is not sufficient to destroy its quality as *res gestae.* Although the statement was in response to an inquiry it hardly may be said that there was such an "interrogation" as would remove the declarant from the mental attitude of expostulation influenced by the 'excitement and stress of the event itself. It is our view that the proffered evidence should have been admitted as part of the *res gestae.* It then remains to inquire whether the rejection of the evidence was prejudicially erroneous.

Of course the refusal of the evidence could not have affected appellants Hughes adversely, since it merely tended to place culpability on Hughes, and the jury found Hughes blameworthy anyway. But the same may not be said as to the jury's finding against the bus interests. It will be remembered that there was dispute in the evidence as to whether the car collided with the bus at all. The only basis upon which the jury could have found against the bus interests was to conclude that the bus driver had failed in the exercise of his high degree of care after the encounter between the car and bus. It may be that the jury could have found that the collision between the vehicles, if any, was so slight as not to afford causative basis for the erratic course of the bus after the collision. The jury may have drawn the inference from the testimony that the bus driver had ample opportunity to reduce the speed of the bus, or to regain full control of its movements, or both, and thus have prevented the collision with the tree and the resulting injuries. It seems clear that the jury's decision in this regard may well have been influenced by its own conclusion as to the force and extent of the collision—therefore, the *res gestae* statement of Ferrell was of vital significance and should have been submitted to the jury as touching on the question of liability of the bus interests.

◼ The relevance of the Ferrell statement, as we have said, pertains to the ques-

tion of liability—not the question of damages. We are reversing so much of the judgment as imposes liability upon appellants Roland and the Board of Education, for a new trial on the question of liability only. If the jury's verdict at a new trial fixes liability upon these bus interests, the trial court will award judgment against them in the amounts fixed in damages by the verdicts at the second trial. If the bus interests are absolved of liability by the verdict on a new trial, judgment will be entered in their favor. It is our view that the granting of a partial new trial in the circumstances presented comports with the purpose of CR 59.01. Cf. Scuddy Mining Company v. Couch, Ky., 295 S.W.2d 553; 14A Ky.Digest, New Trial, ■

■ The second point advanced by appellants Roland and the Board of Education is substantially included in the fourth point they present, and we shall discuss them together. The appellants assert that the physical facts show conclusively that the bus driver was free of negligence. We do not think so. There was dispute as to whether the bus was entirely on its side of the road when the Hughes car was passing; the accumulated "slush" in the roadway was not so convincingly established as the point of impact as to foreclose negligence on the part of the bus driver. In any event, the evidence is clear that it was not the impact between the car and the bus which caused the injuries. The jury had a right to believe that as between the bus driver and the passenger there was a failure on the part of the bus driver to exercise the high degree of care owed the passengers—as distinguished from the rules of ordinary care respecting the reciprocal duties of the bus driver and the operator of the car. Appellants rely upon Greyhound Corporation v. Allen, Ky., 353 S.W.2d 558. Significantly it is to be observed that in that case the court remarked:

"Apparently it is plaintiffs' argument that if the driver had better control of the bus he would not have run off the road

and turned over. The answer is that the driver's subsequent loss of control was *clearly shown* to have been caused by the impact and not by the earlier manner of operating the bus." Id., Ky., 353 S.W.2d at p. 560 (Emphasis added.)

In the case at bar it is not shown—clearly or otherwise—that the subsequent loss of control was caused by the impact. It is our view that the evidence was sufficient to warrant submission to the jury of the issue as to negligence of the bus driver toward the passengers on the bus.

■ During the course of the trial some of the student claimants gave evidence which conflicted with prior written statements they had given. Counsel for appellants Roland and the Board of Education undertook to impeach these witnesses by reading excerpts from the prior statements. Thereupon it was brought out by interrogation of the students that the statements had been furnished to an adjuster for the insurance company carrying the liability insurance on the bus. The court admonished the jury that it could not consider the matter of insurance as affecting the merits of the case. We think this case is ruled by the rationale of Triplett v. Napier, Ky., 286 S.W.2d 87. The matter of insurance was not injected into the case except in effort to show bias and interest of the adjuster who took the statements—statements which contained recitations favorable to the bus interests, and which recitations were asserted by the witnesses to be incorrect. The adjuster did not testify in the case. In these circumstances, we hold that there was no error in permitting the explanation of the statements and the circumstances in which they were given.

■ In this same connection, it is claimed in brief for appellants Roland and Board of Education that one of appellees' counsel made inflammatory remarks suggesting insurance in his closing argument. The short answer to this is that there is no transcript of the argument in the record, nor any showing that the claimed argument

was made. The claimed error is not available for appellate review.

■ The final point advanced by the bus appellants is their assertion that the verdict in favor of the Ferrell estate is inconsistent with the verdicts in favor of the students. Reliance is had upon Greyhound Corporation v. Leadman, Ky., 285 S.W.2d 177, but the case is not in point. In Leadman the plaintiff had sued the bus driver and the bus owner; the jury's verdict absolved the driver but imposed responsibility on the owner. Obviously the owner's liability was purely derivative, so the verdict absolving the driver necessarily absolved the owner. Here the situation is different. The passengers did not sue the bus driver, nor did the verdict undertake any finding of his liability to them. The litigants appear to recognize that a different degree of care was due from the bus driver (and the owner and lessee of the bus) to the passengers than was due from the bus driver to the driver of the Hughes car. The "double-standard" of care as between passengers and highway traffic was recognized in Conley's Adm'r v. Ward, Ky., 291 S.W.2d 568.[1] We think the evidence in the case at bar clearly warrants the inference that although Hughes' negligence precipitated the erratic actions of the bus, the driver of the bus had ample opportunity to regain control of the vehicle or reduce its speed or both, so as to avoid injury to the passengers. Thus the verdict is not inconsistent on its face.

## THE HUGHES APPEAL

In their separate appeal Danny and Nettie Hughes present three grounds upon which they seek a reversal of the judgments against them: (1) The court erred in permitting recovery for permanent injury as to appellee Bonnie Barbour New; (2) the damages awarded in "several of the cases" are so disproportionate to the injuries suffered as to indicate passion and prejudice of the jury against the appellants; and (3) improper closing argument and prejudice in calling defendants as witnesses, as if on cross-examination.

■ In answer to the first point raised by these appellants it is noted that the instruction given by the trial court did not authorize recovery in behalf of appellee New for permanent injuries. The word "permanent" does not appear in the instruction. This has particular significance in this case because there were instructions in the case, relating to other claimants, in which allowances for permanent injuries were submitted. The total award to Bonnie Barbour New was $15,000. Her medical expenses were shown to have been nearly $1,200; she suffered fractures of both arms. The fractures in her left arm required surgery for open reduction; she was hospitalized on two separate occasions incident to setting the bones in her arms. Medical evidence reflected that her fractures have healed satisfactorily and that she should suffer no permanent disability or impairment of function in her arms. Her left arm bears four surgical scars incident to the open fracture reduction, and the evidence indicates that these scars will permanently exist. At the time of the second trial in August, 1964, she testified that she continued to experience pain in her arms. She told of suffering from a nervous condition resulting as an aftermath of the wreck experiences. She sustained other relatively minor injuries, but the chief injuries were to her arms. We are unable to say that the verdict appears to us at first blush as having been rendered as the result of passion or prejudice. There is no doubt that the claimant has suffered extensive pain and discomfort, both mental and physical. The entire incident was a traumatic one, calculated to affect her mental and physical well being. While we regard the award as liberal, we are not persuaded that it is excessive. Cf. Siler v. Williford, Ky., 375 S.W.2d 262 (1964), in which an award of $15,000 was upheld.

1. Cf. Stanley's Instructions to Juries, Vol. 2, Sections 584, 585, and authorities there cited.

We regard the present case as substantially indistinguishable from the Siler decision.

■ Coupled with the prime assault on the verdict in favor of appellee Bonnie Barbour New, the appellants present a "shotgun" attack on all the verdicts for the claimants. The chief argument is that inasmuch as the jury returned no verdict less than $300, and in some of those verdicts for $300 the injuries were minimal, there is thereby demonstrated a pervading taint in all the verdicts. We are not favored with citation of authority to support this argument, nor are we persuaded by it. We are indisposed to cull this voluminous record for minute inspection of each claim; if appellants seriously contend that the verdicts are excessive they should point out the basis for their argument. In their brief the appellants Hughes make brief reference to verdicts of $300 each returned in behalf of Johnny Hammond, Sidney Beckham, Phillip Trinkle, Mike Keith and Jerry Thornton. They omitted reference to the $300 award to R. W. Riddle. It is true that the personal injuries sustained by these claimants were not severe, and the verdicts so indicate. They did have some minor injuries, and underwent the relatively harrowing experience of the accident. We have no disposition to regard the verdicts as to them as so excessive as to reflect passion or prejudice.

■ The same view is taken of the other verdicts mentioned in brief for appellants Hughes, namely: David Beckham, $600; Glen Cox, $750; Robert Burke, $500. As respects the award of $3,000 in behalf of Bobby Lusby, we consider this to have been a liberal award, but not an excessive one. Despite the medical testimony of one physician that he could find no "objective symptoms" in this claimant, there was other medical proof indicating that the claimant had sustained such a blow on his head as resulted in a "personality change." We are disposed to believe that the appellants Hughes regard the other verdicts in behalf of the bus passengers as temperate since they do not specifically attack them. It is not to be presumed that the jury rendered temperate verdicts in ten of the claims of the students while evincing passion and prejudice as to eleven of them.

■ The appellants Hughes level a somewhat more concentrated attack on the $20,000 verdict returned in favor of the estate of Claude Ferrell, the bus driver. It is pointed out that the actual earnings of Ferrell aggregated only $850 per year; he was 56 years old at the time of his death, with an expectancy of 12.3809 years. Appellants cite Louisville & N. R. Co. v. Stephens, 298 Ky. 328, 182 S.W.2d 447, as authority for reversal here. While some of the reasoning in the cited authority is apposite it is well to observe that the quantum of damages recoverable under the Federal Employers' Liability Act (the pertinent basis of the claim in Stephens) is substantially different from the measure of damages for wrongful death under KRS 411.130. The appellants Hughes correctly recognize our rule in such cases by citing Spangler's Adm'r v. City of Middlesboro, 301 Ky. 237, 191 S.W.2d 414, in which it is stated that the measure of damages in a wrongful death action is " * * * the destruction of the deceased's power to earn money." For Ferrell's estate it was shown that he worked at his income-producing job, driving the school bus, about 20 hours per week. This averages about $1.35 per hour for the hours worked. The evidence reflects that the decedent's wife had been an invalid for several years, and that he devoted virtually his entire time, except while driving the school bus, in attending her. It is clear that he had a legal and moral duty to provide this type of care for his invalid wife. It would seem immaterial whether he worked "out" and earned the money to hire the tasks done, or stayed at home and performed them himself. As noted, our rule of damages in such cases is the destruction of the *power* to earn money—not the destruction of decedent's income from the particular work in which he was engaged at the time of the wrong-

ful death. Decedent's potential for earning money is a proper consideration. Cf. Temperly v. Sarrington's Adm'r, Ky., 293 S.W.2d 863, 868–869. Obviously, in case of a claim for wrongful death of a small child the potential for earning is the only gauge, but we have held frequently that recovery may be had in such cases. Cf. McCallum v. Harris, Ky., 379 S.W.2d 438.

■ Another point raised by appellants Hughes relates to an alleged remark in closing argument by one of counsel for some of the bus passengers. However, the argument complained of is not in the record; there is no showing of record that any objection was made to the argument until after its completion—and the showing then is not sufficient to incorporate into the record, by affidavit or otherwise, the substance of the remarks, or whether they were in response to arguments of opposing counsel. In this state of record, there is no question presented for appellate review. Ramey v. Ruth, Ky., 376 S.W.2d 292.

■ The final point raised by appellants Hughes pertains to what they urge as improper conduct in calling appellants Danny Hughes and Kepple Roland to the witness stand. This occurred at the second trial when only the issue of damages was being tried. The trial judge required the claimants to explain what they expected to prove by these witnesses, and upon being informed that they proposed to elicit evidence relating to the force of the collision between the car and the bus, the court declined to permit examination of the witnesses. Appellants contend this was prejudicial in that it exhibited these persons before the jury. The argument is completely without merit, because these litigants, it must be presumed, were present in court anyway during the entire trial. We are at a loss to understand how it could be suggested that error prejudicial to the appellants was thus committed.

The judgments are affirmed upon the appeals of Danny Hughes and Nettie Hughes,

and reversed upon the appeals of Kepple Roland and Board of Education of Owen County, with directions to grant the latter appellants a new trial upon the issue of liability only.