475 P.2d 321

Frank J. CLINARD, Plaintiff-Appellee,

v.

SOUTHERN PACIFIC COMPANY, a corporation, Defendant-Appellant.

No. 8748.

Supreme Court of New Mexico.

June 29, 1970.

Rehearing Denied Oct. 15, 1970.

White, Gilbert, Koch & Kelly, Santa Fe, for defendant-appellant.

Arturo G. Ortega, William E. Snead, Albuquerque, for plaintiff-appellee.

## OPINION

McKENNA, Justice.

This is an action for damages under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., for injuries sustained by Clinard while an employee of the appellant railroad. The amount awarded was $75,-628.00 but this was reduced by the jury to $60,503.00 for it found that Clinard was contributorily negligent by 20%. Judgment was entered for this reduced sum. The railroad appeals for several reasons.

On February 15, 1965, a cold and bitter, snowy morning, Clinard, a gang foreman, and his three-man crew reported for work. The day's assignment was routine maintenance work on the railroad's track east of Vaughn, New Mexico. His normal crew was the three men, but the railroad requested Clinard to loan his third man to

another crew which could not work without a look-out man to watch for oncoming trains. Under the circumstances, this was expected of Clinard by the railroad. No other man was available for this other crew.

Clinard's crew, short one man, then went to work on the track. One of Clinard's duties was to watch for oncoming trains, but if he was busy with other duties, it would have been the duty of the third man to watch. The work was lifting sections of rail with a hydraulic jack and then tamping the bed ballast with a jack hammer to level the track.

During the course of the morning's work, the air compressor was not functioning properly. His men had raised a joint of the track with the hydraulic jack and they were tamping ballast under it with their jack hammers but the balky air compressor prevented the jack hammer from operating efficiently. Clinard then left the track site where his two-man crew was busily engaged in their work. As we have observed, the missing man would then have been the look-out.

Before leaving, Clinard testified, he told his two men to "Watch out for trains." This testimony was admitted over the objection of the railroad.

While Clinard was working on the balky compressor, he heard a train whistle. He was not expecting a train to arrive at that time. He looked up, saw the train, ran from the compressor up the embankment toward the track where the two men were working with their jack hammers, hollering at them in an effort to warn. The men, working oblivious of their danger, apparently did not hear for they were struck by the train and instantly killed. Their deaths, however, are not the subject of this dispute.

As Clinard was running toward the work site, the train passed over the track, the hydraulic jack was expelled and propelled, striking Clinard, causing the injuries for which $75,628.00 was awarded.

At the time of the accident, Clinard was 64 years of age, a little over a year from retirement age. He suffered fractures of both bones of the right arm and a hairline fracture of the pelvis. The pelvis did heal satisfactorily but the arm eventually required an open reduction and a bone graft. He did not gain full use of his arm and the affected shoulder. There was evidence submitted of some considerable pain and suffering. There was also some back trouble, but Clinard had complained of back trouble for some time prior to the accident. There was some evidence that the injuries precipitated his retirement prior to his contemplated plans. Clinard did not return to his railroad job and retired at 65.

 The railroad's first claim is that there was no evidence of any negligence on its part that in any way caused or contributed to the accident. It urges that its motion for a directed verdict should have been granted. Under F.E.L.A. cases, the carrier is liable to an injured employee for the injury resulting *in whole or in part* from the negligence or carelessness of its officers, agents or employees. The *slightest* negligence is sufficient if it played any part or in any way caused or contributed to the injury. Chavez v. Atchison, Topeka and Santa Fe Railway Co., 77 N.M. 346, 423 P.2d 34 (1967). The negligence of the employer can be determined by viewing his conduct as a whole. Blair v. B. & O. Railroad Co., 323 U.S. 600, 65 S.Ct. 545, 89 L. Ed. 490 (1945). If this test is met, it is then a matter for the jury even if there be contributory negligence. Under the Act, supra, the award is to be proportionately reduced by the percentage of contributory negligence found. 45 U.S.C.A. § 53.

 Our appraisal is that the plaintiff met this test. The evidence showed that Clinard proceeded to work with a short crew and that this was expected of him by the railroad, for the railroad's benefit. If the third man had been with him, there would have been a look-out to notice the approaching train in time to warn the men and to remove the hydraulic jack which

imperiled the safety of the train's passage. Clinard ran to warn the men, thereby placing himself in the line of the propelled jack. In Chavez, supra, we found negligence where the railroad failed to provide sufficient help to perform a job. Whether or not there was negligence on the part of the two-man crew in not being on the alert, is not before us; however, in F.E.L.A. cases the negligence of fellow employees does not bar a right of an employee to recover damages. See cases collected under Note 497, 45 U.S.C.A. § 51.

The second argument of the railroad is that Clinard's statement telling his crew to "Watch out for trains" was improperly admitted into evidence. Clinard stated he so warned his crew when he left the job site to work on the air compressor. It was some ten minutes later that he heard the whistle of the oncoming train. The railroad's position is that the statement was hearsay and self-serving. Clinard argues that it was admissible under the res gestae doctrine and as a verbal act expressing a mental feeling or a natural reflex which is material and relevant to a pertinent issue. Both sides concede the materiality of the statement. It bears on the possible negligence of the railroad's employees in failing to remove the jack and the issue of contributory negligence of Clinard.

■ That it may be self-serving is not controlling if the statement falls within the guidelines of res gestae. Bass v. Muenchow, 259 Iowa 1010, 146 N.W.2d 923 (1966). But its self-serving character is a factor which bears on, and is to be considered in determining the trustworthiness attributed to spontaneous exclamations. Roland v. Beckham, 408 S.W.2d 628 (Ky. App.1966). See cases collected in the Annot., at 53 A.L.R.2d 1245. In Nichols v. Sefcik, 66 N.M. 449, 455, 349 P.2d 678 (1960), and in Brown v. General Insurance Company of America, 70 N.M. 46, 52, 369 P.2d 968 (1962), we refused the admission of purely self-serving statements, commenting on the obvious opportunity there presented to manufacture and fabricate the evidence excluded. While not determina-

tive, there is the factor that the crew members to whom the claimed statement was made are dead and there is no one but the plaintiff to testify. This, of course, is two-edged for there is no person for Clinard to go to for corroboration, but lack of corroboration does bear on the element of trustworthiness. See Fischer v. Chicago & N. W. Ry. Co., 193 Minn. 73, 258 N.W. 4 (1934).

■ In Jameson v. First Savings Bank & Trust Co. of Albuquerque, 40 N.M. 133, 140, 55 P.2d 743 (1936), we discussed the res gestae doctrine. The difficulty of res gestae is always the same: its application to a particular situation and, as observed in Jameson, at page 142, the particular facts of each case must control rather than rigid rules of exclusion which may keep out the truth. In Jameson, supra, we quoted liberally from Roh v. Opocensky, 126 Neb. 518, 253 N.W. 680, 681 (1934), which discussed expressions of bodily or mental feelings or natural reflexes and verbal acts.

The injuries here occurred some ten minutes after Clinard left the job site. While time alone may not be the sole test, it is questionable that the claimed statement is so linked with the later accident in such continuity of action as to be a part of the accident. Nor was the statement made under circumstances of stress as would remove it from the doubtful character generally present in self-serving statements. Clinard was not expecting any train for some time; he left to perform a routine task while routine work progressed.

■ "Spontaneity," stated to be the most influential factor in determining admissibility under the doctrine of res gestae, is a product of stress. Roland v. Beckham, supra; Annot., 53 A.L.R.2d 1245, supra. Absent stress we question its "spontaneity" as the law uses that term and emphasize the self-serving nature of the statement. Compare State v. Apodaca, 80 N.M. 244, 453 P.2d 764 (Ct.App.1969).

Hatzakorzian v. Rucker-Fuller Desk Co., 197 Cal. 82, 239 P. 709, at 716, 41 A.L.R.

1027 (1925), tends to support the arguments for admissibility. There a witness testified as to the statements of the deceased who was struck by a car. A few minutes prior to the accident, the witness stated that the deceased had kept warning his companion witness to keep off the paved highway as "somebody [might] hit you." The court found such testimony admissible as a verbal act and tending to disclose the deceased's mental feeling that he was aware of the dangers of walking over a road at nighttime and was exercising due care. However, and we note again that the testimony in our case came from Clinard rather than from a witness, we believe .Hatzakorzian, supra, presents a much tighter link in the continuity of action.

 Considering all the factors present, we do not believe that Clinard met his burden of establishing its admissibility. We hold the admission of the testimony was prejudicial error and in itself sufficient basis for granting a new trial.

Since there is to be a new trial, some of the remaining points presented by the appellant must be noticed.

The railroad says that the court should not have given instruction No. 18 for it was repetitious and amounted to the giving of a negative instruction. It reads as follows:

"As I have previously instructed you, this action is controlled by the federal law rather than the laws of the State of New Mexico, which control other types of industrial injuries. In this action the employee is entitled to no recovery from the railroad unless he has proved by a preponderance of the evidence that his injuries were proximately caused in whole or in part by the negligence of the railroad. However, if you should find that the plaintiff has made such proof and accordingly is entitled to recover, I instruct you that such recovery is in no way governed by any compensation schedule, and in considering the amount of your verdict you should completely dispel from your minds any knowledge which you may have as to the amount of recovery for similar injuries sustained by employees engaged in other occupations. The amount of your verdict shall depend solely upon the facts in this case and this Court's instruction to you regarding the various elements of damage which you are allowed to consider and upon which subject the court will now more fully instruct you."

The railroad also complains of the failure to give what is our U.J.I. No. 17.8 (U. J.I., p. 271) which provides:

*"You are not to discuss damages unless you have first determined that there is liability.*

"DIRECTIONS FOR USE

"This instruction is to be given in every case where the issue of damages is submitted to the jury.

"COMMITTEE COMMENT·

"See ÛJI 14.1 and the comment therein.

"It is the intent that this subject matteṙ be *twice covered* due to the natural sympathy for an injured plaintiff and to expedite the trial of the case." (Emphasis added.)

The court did give U.J.I. No. 14.1 which in part instructs the jury not to engage in any discussion of damages unless liability is first determined. However, as noted above under "Committee Comment," this aspect is to be twice covered by the giving of U.J.I. No. 17.8.

 Instruction No. 18 does tell the jury not to do something which is violative of one of the policies of U.J.I. (U.J.I. p. IX.) We specifically do not approve of the granting of a negative instruction but do not perceive this in itself as constituting reversible error. Furthermore, the negative language is primarily cautionary, is not contrary to law and we do not believe it was prejudicial. However, the failure to give U.J.I. No. 17.8 is another matter.

 Instruction No. 18 requested by the plaintiff, which we have just discussed

from another aspect, did in part advise the jury that there is to be no recovery unless the plaintiff established by a preponderance of evidence that his injuries were proximately caused in whole or in part by the railroad's negligence. The defendant requested and was granted No. 14.1, but our U.J.I. requires that both 14.1 and 17.8 are to be given, purposely to cover the subject-matter twice. Plainly, both are to be given unless, as provided by our Civil Procedure Rule 51(1) (c) (§ 21–1–1(51) (1) (c), N.M.S.A. 1953 (Supp.1969) ), the court finds and states of record its reasons why the proposed instruction is erroneous or otherwise improper. This was not done.

Considerable hours of hard work by both the Bench and the Bar led to the adoption of the Uniform Jury Instructions. They are well-calculated to expedite trials and the administration of justice. This Court will not let that work and those beneficial purposes be chipped away. Without doubt that was part of the sense of our Court of Appeals in Chapin v. Rogers, 80 N.M. 684, 459 P.2d 846 (Ct.App.1969). We do realize that over-emphasis may be reversible error, Scott v. Brown, 76 N.M. 501, 416 P.2d 516 (1966), and perhaps the trial court had this in mind since it had given instruction No. 18, but we do not know this from the record. Any over-emphasis must be laid to the plaintiff, for instruction No. 18 was sought by him. As a matter of language we prefer U.J.I. 17.8 for it kernels what instruction No. 18, supra, proliferates. U.J.I. 17.8, specifically requested by the railroad, should have been given and the failure of the trial court to explain why it was not, and to follow the clear, mandatory requirements of Rule 51(1) (c), supra, constitutes reversible error in this case.

■ Next, the railroad complains of the granting of instructions 23 and 24, which read as follows:

"It was the continuing duty of the defendant, as an employer, at the time and place in question, to use ordinary care under the circumstances, in furnishing the plaintiff with reasonably safe working conditions. This does not mean, of course, that the employer is a guarantor or insurer of the safety of the working conditions. The extent of the employer's duty is to exercise ordinary care, under the circumstances, to see that the working conditions are reasonably safe, under the circumstances shown by the evidence in the case." (Instruction No. 23.)

"You are instructed that under the law, the railroad is under a continuing duty to exercise ordinary care to provide plaintiff with a reasonably sufficient number of fellow employees to perform safely the work being done, and a violation of that duty upon the part of the railroad constitutes negligence." (Instruction No. 24.)

The evidence warranted those instructions. Clinard testified that section gangs had already been reduced to three men, the bare essentials, and, further, that it was expected of him to lend his third man to another foreman who could not work without a look-out. Whether he should have protested is another matter but, realistically, he was an employee and the release of his look-out was for the defendant's benefit. Short one man gave rise to an unsafe working condition; at least, there was evidence to support such a condition. We see no error, under these circumstances, in the granting of an instruction that an employer is required to furnish reasonably safe working conditions (No. 23), combined with a somewhat specific instruction as to the railroad's duty to provide a sufficient crew to perform safely the required work (No. 24). See Bourguet v. Atchison, Topeka & Santa Fe Railway Co., 65 N.M. 207, 334 P.2d 1112 (1959); Durkin v. Elgin, Joliet & Eastern Railway Co., 12 Ill. App.2d 190, 138 N.E.2d 866 (1957).

The railroad also assigns error as to instruction No. 28. This instruction recited the specific safety rules, permitted the jury to consider such rules on the issue of Clinard's contributory negligence and also permitted the jury to decide if such rules had been abrogated by custom.

Concerning the complaint that the evidence presented did not justify instruction No. 28 on abrogation of the safety rules of the employer by custom, we would note that if the evidence at the new trial warrants the giving of an instruction on the subject, then the jury should be instructed concerning when abrogation by custom occurs. This should include advice that there can be no abrogation by custom unless the violations of the rule were so frequent as to be habitual; that they occurred so often that the master must have had actual or implied knowledge; and that the master actually or impliedly approved of the violations. See the discussion of the controlling evidential elements in Lasagna v. McCarthy, 111 Utah 269, 177 P.2d 734, 739 (1947), and in Covington Coal Products Co. v. Stogner, 181 Okl. 35, 72 P.2d 491, 494 (1937).

Finally, the railroad complains that the verdict of $75,628.00 is excessive as a matter of law, necessarily resulting from passion and prejudice and from the application of a wrong measure of damages. This question was presented to the trial court by a motion for a new trial, and denied. In Mathis v. Atchison, Topeka and Santa Fe Railway Co., 61 N.M. 330, 337, 300 P.2d 482 (1956), we concluded that an appellate court should substitute its own judgment for the trial court *only* when excessive damages appear to have been given under the influence of passion or prejudice, but at the same time observed that an award will not be approved which is so grossly out of proportion as to shock the conscience. Apparently there was nothing in the record in Vivian v. Atchison, Topeka and Santa Fe Railway, 69 N.M. 6, 12, 363 P.2d 620, 624 (1961), to show that the issues were affected by passion and prejudice but, regardless, the verdict was determined to be excessive as a matter of law. We there said:

"* * * Where the trial court, as here, has allowed the verdict to stand, the appellate court will not weigh the evidence but will look to see whether the evidence, viewed in the light most favorable to upholding the verdict, affords substantial support for the verdict. * * *"

The record here does not contain any specific evidence of passion or prejudice, but the railroad contends that the excessive amount of damages, in view of the facts, is clear evidence of such factors and the jury's desire to punish the railroad. In reviewing excessiveness of a verdict we do not necessarily need to go that route, for Vivian, supra, does permit us to determine from the entire record if there is substantial support for a verdict. We say what has been said to eliminate any misapprehension of what our law is, but we go no farther here since there must be a new trial.

For the reasons herein stated, we reverse and grant a new trial.

It is so ordered.

COMPTON, C. J., and TACKETT, WATSON and SISK, JJ., concur.