Pearl E. DILLEY, Administratrix of the
Estate of Glen D. Dilley, Deceased,
Plaintiff-Appellee,

v.

The CHESAPEAKE & OHIO RAILWAY
COMPANY, Defendant-Appellant.

No. 15186.

United States Court of Appeals
Sixth Circuit.

Jan. 30, 1964.

Harrison W. Smith, Jr., Columbus, Ohio (Wilson & Rector, Harrison W. Smith, Jr., Columbus, Ohio, on brief), for appellant.

Samuel T. Gaines, Cleveland, Ohio (Metzenbaum, Gaines, Schwartz, Krupansky, Finley & Stern, Samuel T. Gaines, Harold Sayre, Cleveland, Ohio, on brief), for appellee.

Before MILLER and WEICK, Circuit Judges, and BROOKS, District Judge.

BROOKS, District Judge.

This is an appeal from a jury award to Pearl E. Dilley, Administratrix of the Estate of Glen D. Dilley, deceased, plaintiff-appellee in an action brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., against the Chesapeake & Ohio Railway Company, defendant-appellant. The parties hereafter will be designated as in the trial court.

The plaintiff's decedent, Glen Dilley, was employed by the defendant as a signalman and was operating a jeep on a narrow right-of-way on top of a 15-foot embankment parallel to some railroad tracks when the jeep went over the embankment and overturned, resulting in his death. On the day of the accident Dilley and two other employees of the railroad, Lushbaugh and Hatcher, were assigned by Gwinn, the foreman in charge of a 12-man work detail, to install a pipe-connected derail near Hyatts, Ohio. A derail is a device mounted on one rail to protect against a car on a side track rolling out of the side track and fouling another track. A pipe connection to the switch replaces a manual control and causes the derail to move on or off the rail in response to the setting of the switch itself. The derail pipe to be installed was to run a distance of some 184 feet from a switch to a derail tie. The derail tie extended on to the embankment right-of-way and was horizontal to the ties upon which the railroad tracks rested. Due to the extension of the derail tie out over the right-of-way, only a narrow passageway remained between the end of the derail tie and the edge of the embankment.

A portable generator that was needed to install the derail was mounted on a jeep which was located some four miles from the job site. Because of seniority Dilley was in charge of the three-man crew but he did not have an automobile operator's license and was not qualified or authorized to operate a jeep, so when the foreman designated the men to do the work he directed Lushbaugh, who was a licensed driver, to go get the jeep and charged him with its operation. Lushbaugh got the jeep and drove it to the job site where he met the other two men. He drove it up the embankment but when he reached the derail tie he stopped and refused to proceed further although the generator was needed for work at the switch. Lushbaugh had previously operated a jeep from the derail to the switch and on one occasion the jeep had gone over the side of the embankment. When he stopped the jeep on this occasion he gave as his reason that it was too dangerous to proceed further, and Hatcher also commented that it was too dangerous to continue. However, plaintiff's decedent, in spite of these warnings, ordered Lushbaugh out of the jeep, stating in effect that Lushbaugh should get out and let someone in that could drive it. He moved the jeep only a short distance along the narrow right-of-way around the derail tie and toward the switch when the fatal accident occurred.

Probably the most crucial factual question presented by the evidence in this case was whether, as plaintiff contends, the fatal accident occurred because the embankment was defective and suddenly gave way or whether, as defendant contends, it was caused by the plaintiff's decedent undertaking to operate the jeep and negligently driving it too near the edge or even over the edge of the embankment so as to cause it to overturn. The importance of this issue is reflected by the pleadings of the plaintiff, where five specific acts of negligence are attributed to the defendant, four of which were submitted to the jury with all but one drawn to support plaintiff's theory that the embankment was defective. The four specifications of negligence submitted in the instructions to the jury were the failure to (1) provide plaintiff's decedent with a reasonably safe place in which to work; (2) to provide proper and adequate equipment for the transportation of defendant's machinery; (3) to construct the embankment so as to provide adequate space and support for the work

being performed thereon; and (4) in permitting its embankment to become defective, weak, and insecure so as to constitute a hazard likely to result in injury. The importance of this issue to the defendant is also apparent as a favorable jury verdict could hardly be returned for the defendant unless the defendant's version of how the accident occurred prevailed.

■ Evidence directly relating to this critical factual issue was permitted to be introduced over defendant's objection and is one of the grounds urged for reversal of this case. The evidence objected to is a written report of the accident made by the foreman, Gwinn, on a regular printed form used by the railroad for the required reporting of accidents by its employees. Gwinn's answer to the form question, "Describe in full how accident occurred." was "Jeep upset from right-of-way when cinders and bank gave way." Gwinn was not an eyewitness of the accident but he did view the scene before making out his report. Defendant insists that the admission into evidence of this report containing Gwinn's opinion as to how this accident occurred and which convincingly supports plaintiff's version of the cause of the accident was prejudicial to defendant's substantial rights. We agree.

■ As contended by the defendant, this exhibit containing the witness's opinion as to how the accident happened could not be properly introduced for the purpose of contradicting or impeaching the testimony of the witness because the witness testified that he made the statement contained in it. Where a witness admits a statement attributed to him there is no necessity to prove it and the statement is not admissible in evidence. 58 Am.Jur. Witnesses Section 780; 98 C.J.S. Witnesses § 610. Neither was the report admissible in evidence under the exception to the hearsay rule provided by the Federal Business Records Act. 28 U.S.C. § 1732. The Supreme Court, in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), settled this issue conclusively when it affirmed the refusal of the trial court to admit a signed statement of a railroad engineer concerning his version of a grade crossing accident in which the locomotive he was operating was involved and which he gave when he was interviewed by an official of the company and a representative of a state commission as not being made in the "regular course of business" contemplated by the Act. In holding the engineer's report inadmissible the Court stated, "It is not a record made for the systematic conduct of a business as a business. An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act. * * * There [the reports] primary utility is in litigating, not in railroading."

■ Finally, the report was not properly admissible into evidence as an extrajudicial admission of the defendant. The mere fact that a railroad requires an employee to make a report to it of an accident is not sufficient to cause the report to become binding upon the railroad as its own statement. Whether a report of an employee becomes an admission of the employer depends upon the scope of the employee's authority. Nuttall v. Reading Co., 235 F.2d 546 (3rd Cir. 1956); Flintkote Co. v. Lysfjord, 246 F.2d 368 (9th Cir. 1957); United States v. United Shoe Machinery Corp., 89 F.Supp. 349 (D.C.Mass.1950); Lever Bros. Co. v. Atlas Assur. Co., 131 F.2d 770 (7th Cir. 1942); Lorber v. Vista Irr. Dist., 127 F.2d 628 (9th Cir. 1942); Wigmore on Evidence (3rd Ed.), Section 1078; Restatement, Agency, Section 287; 2 Mor-

gan, Basic Problems of Evidence 236. A careful and thorough analysis of this question appears in United States v. United Shoe Machinery Corp., supra. There Judge Wyzanski said,

"Where the party is a natural person, any statement made by him either publicly or secretly is his. See Chadwick v. United States, 6 Cir., 141 F. 225, 239; Wigmore, Evidence, 3d Ed., § 1057(3).

"Where the natural person has an agent who makes a statement *to a third person*, the statement is the principal's if the agent was authorized to make the statement or was authorized to make on the principal's behalf true statements concerning the subject matter. Restatement, Agency, § 286. This is because of the doctrine of *respondeat superior*.

"Where the agent makes a report *to the principal or to another agent*, and all that appears is that the principal had authorized the agent to make such a report, a statement in the report is not the principal's and is not an extrajudicial admission of the principal. Restatement, Agency § 287; Morgan, supra; Mechem, Agency, 2d Ed., § 1784; Langhorn v. Allnutt, 4 Taunt. 511, 517, 128 Eng.Rep. 429, 431. The principal gave his agent limited authority to investigate a topic and report. Authority merely to report *to* a principal or a fellow agent is not authority to commit the principal. Otherwise every time a principal asked an agent to look into the history of an accident, or an invention or the state of competition, the principal would be held to be an underwriter of the report and to guarantee its trustworthiness. But the principal did not intend to vouch for it sight unseen. The principal was not ready to make the statement his own or to give it to the world. And the doctrine of *respondeat superior* does not apply. * * *

"A corporation may make its statements by a vote of the shareholders (citing case) or on most matters by a vote of the directors. And whether these be open or secret votes, they are admissions of the corporation. The difficulty arises with respect to officers and employees. Where these agents speak to the outside world, the corporate principal like the individual principal is, by the fiction of *respondeat superior*, held accountable for the agent's statement if he was authorized to make the statement or was authorized to make on the principal's behalf true statements concerning the subject matter (citing cases). However, where these agents report to other corporate agents, the mere fact that the corporation gave the agents authority to make such intramural reports does not make statements in those reports the statements of the corporation (citing cases). Otherwise every time the directors required a subordinate to make a report of an accident, an invention or the state of competition the subordinate would have authority not only to reply but also to commit the corporation."

Chicago, St. P., M. & O. Ry. v. Kulp, 102 F.2d 352 (8th Cir. 1939), 133 A.L.R. 1445, and Dotson v. Pennsylvania R. R., 142 F.Supp. 509 (W.D.Penn.1956), relied on by plaintiff, do hold that reports by the conductor in charge of a train as to the cause of accidents are admissible where the conductor is required by the railroad to report the cause of the accident on the ground that such declarations are within the scope of his duty and therefore are declarations of the principal. Dotson, however, while citing Kulp, does also advance additional grounds of admissibility stating the "rule is well settled which permits the receipt of admissions made by an agent of a party when the agent's powers are broad enough to constitute him the general representative of the principal with broad managerial responsibilities" and

holding the conductor's responsibilities and powers placed him in this category. However, the accident report in the present case was not made by a conductor in charge of a train but by a foreman of a 12-man work crew. United States v. New York Foreign Trade Zone Operators, 304 F.2d 792 (2nd Cir. 1962), also relied upon by the plaintiff, is distinguishable as the accident report there was admissible under the Federal Business Records Act, 28 U.S.C. § 1732.

It is for these reasons that it is concluded the intra-company report of the accident made by the foreman of a work gang even though he was required by his employer to make it was not an admission of the railroad and was not admissible under any suggested rule of evidence.

■ Since a new trial must be granted we think it appropriate to comment briefly on the charge given the jury on assumption of risk. After all the evidence was in the defendant, anticipating the plaintiff would argue that the defense offered by the defendant was the defense of assumption of risk and that such a defense was not available under the statute, objected to the doctrine of assumption of risk being referred to either in instructions or in plaintiff's argument. The objections were overruled and the plaintiff in her argument * defined assumption of risk and, as anticipated, stated to the jury that the defense offered was nothing but the defense of assumption of risk and by specific legislative enactment (53 Statutes 1404; 45 U.S.C. § 54) such a defense was not available to the defendant. The defendant in argument responded that assumption of risk was not in the case and was not its defense. The court in instructing the jury charged on assumption of risk by quoting the pertinent portion of Section 4 of the Act without further explanation of the doctrine. The defendant urges that the effect of the plaintiff's argument and the charge was to inform the jury that assumption of risk was in the case, since the plaintiff so argued and the court charged on it, and that it was no defense; also that the jury was unjustifiably forced to engage in the puzzling venture of distinguishing between assumption of risk and contributory negligence. The defendant pleaded contributory negligence in this case and did not plead assumption of risk. A correct instruction on contributory negligence permitting the jury to consider the actions of plaintiff's decedent in the light of a dangerous condition known to him is proper and it is not necessary for the court to instruct on assumption of risk. Gowins v. Pennsylvania R. R., 299 F.2d 431 (6th Cir. 1962). In Tiller v. Atlantic Coast Line R. R., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943), it was held "that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment * * *." and in his concurring opinion Justice Frankfurter states, "Because of its ambiguity the phrase 'assumption of risk' is a hazardous legal tool. As a means of instructing a jury, it is bound to create confusion. It should therefore be discarded." In view of these expressions, when it is necessary to distinguish between assumption of risk and contributory negligence the instructions should carefully and fully make the distinction. However, where the jury as in this case has been presented with no evidence and has heard nothing from any witness or pleading with respect to the doctrine of assumption of risk until the doctrine was defined and its application to the facts of the case debated in final arguments of counsel and thereafter merely mentioned in court instructions it is believed that it would have been the better practice to have eliminated any reference to the doctrine. See Seaboldt v. Pennsylvania R. R., 290 F.2d 296 (3rd Cir. 1961); DePascale v. Pennsylvania R. R., 180 F.2d 825, 827 (3rd Cir. 1950); Texas and Pacific Ry. Co. v. Buckles, 232 F.2d 257 (5th Cir. 1956),

* The arguments do not appear in the transcript but reference to context in briefs is not contradicted.

254

cert. denied, 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498; Koshorek v. Pennsylvania R. R., 318 F.2d 364 (3rd Cir. 1963).

We find it unnecessary to consider other contentions urged by counsel for the respective parties. The judgment is reversed with directions to grant a new trial.