GLENN W. HOWES, Plaintiff-Appellee, *v.* GEORGE P. BAKER *et al.*, Defendants-Appellants.

(No. 57484; )

First District (2nd Division)—October 23, 1973.

*Opinion modified upon denial of rehearing December 20, 1973.*

Robert H. Bierma and Arthur L. Foster, both of Chicago (Richard A. Walkovets, of counsel), for appellants.

James E. Harrington and John J. Naughton, both of Chicago (Henslee, Monek & Henslee, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Glenn W. Howes (hereinafter plaintiff) commenced an action under the Federal Employers' Liability Act, 45 U.S.C.A. sections 51—60, against The New York Central Railroad Company, a corporation which was one of the predecessors to Penn Central Transportation Company. The successor company and its trustees were substituted as parties defendant and hereinafter will be referred to as such.

In essence, plaintiff alleged below that defendants were negligent in failing to provide him with a reasonably safe place to work, charging that defendants knew or ought to have known that the area between an industrial side track and a loading platform—property owned by one of defendants' customers—was hazardous, owing to an accumulation of ice, snow, paper used as lining material in railway cars, and other debris upon which plaintiff slipped and fell, injuring his head.

This appeal by defendants emanates from a judgment entered upon a jury verdict in plaintiff's favor in the sum of $60,000.00.[1] Motions for directed verdicts, both at the close of plaintiff's case and at the close of all the evidence, were denied by the trial court. In addition, a post-trial motion seeking a judgment notwithstanding the jury's verdict and for a new trial was similarly denied.

The issues presented for review are: (1) whether the trial court properly denied defendants' motion for a judgment notwithstanding the verdict because the evidence and the inferences therefrom favorable to

---

[1] It is to be noted the amount of the verdict is considerably below what plaintiff requested from the jury.

the plaintiff presented a jury question; (2) whether the conduct of plaintiff's attorney was designed to, and did in fact, deprive defendants of a fair trial; and (3) whether the jury was properly instructed on the applicable law.

The facts pertinent on review are as follows. Plaintiff, a resident of Ohio, was an employee of defendant-railroad for some 14 years, and worked for the company in Columbus, Ohio in the capacity of a yard clerk and "car checker." As such, he worked not only in the offices of the railroad, but also on the properties of industries serviced by his employer, some of which maintained warehouses adjacent to side tracks located in the area where plaintiff performed his duties. Plaintiff's responsibilities included frequenting defendants' customers to check the yard tracks and the railway cars situated on the customers' side tracks for the purposes of demurrage; checking the load status of the cars; and, on occasion, observing and repairing refrigerator cars on the customers' side tracks. Plaintiff worked from time to time in inclement weather, and, if he considered conditions on the property of a customer hazardous, plaintiff was to report the situation to the customer's traffic manager; if nothing was done to rectify the circumstance, he was then to report it to his supervisors.

Plaintiff was injured on February 5, 1965, when he slipped and fell on the premises of Colonial Stores, one of his employer's customers. Colonial maintained a warehouse and had two side tracks adjacent thereto. One track, known as a "perishable track," ran north and south, paralleling a high loading platform or dock, which was located east of the track. The other track ran around the warehouse.

It had snowed on several occasions in the days preceding plaintiff's accident, and, on February 5, 1965, ice and snow had accumulated in the area between two railway cars, which freighted potatoes and which were located on Colonial's perishable track, and the company's loading dock. Over and above that, the area was littered throughout with pieces of liner paper used to line the insides of potato cars. (A reading of the record leaves no doubt that the area mentioned was seldom unlittered; not only liner paper was scattered throughout, but rubbish, cardboard, and boards as well. Plaintiff reported the condition to his supervisor during January of 1965 and on other occasions during 1964.)

On February 5, 1965, plaintiff arrived at his job, parked his automobile, and proceeded to inspect the two potato cars on Colonial's side track. As was his custom of inspection, he walked between the cars and the loading platform, the area described in detail above. After completing his inspection of the first car, plaintiff walked toward the second, and, while so doing, slipped on a piece of potato car liner paper. His right

foot went out from under him, then his left foot, and he landed on the back of his head and neck.

Plaintiff was hospitalized, and x-rays disclosed a hair line stellate fracture at the back of the skull. Because of plaintiff's continuing complaints, a neurological surgeon was called in, and examinations disclosed a hematoma with a contra coup contusion of the brain. Tests also revealed an aneurysm in the brain, which is a congenital and potentially lethal defect. An operation was performed to ligate or close off the aneurysm. Evidence showed that plaintiff's fall did not cause the aneurysm and did not aggravate it.

Plaintiff returned to work on September 16, 1965, still complaining of pain, and he continued to receive treatment. His doctor diagnosed his condition as a traumatic brain contusion, fracture of the skull, joint strain of the neck and secondary changes of the left temporal mandibular joint with blood vessel irritation, causing a weakness of the right arm and right leg amounting to a mild paresis, which is a state of paralysis.

## I.

With regard to the first issue presented here—whether the court below erred in denying defendants' motion for a judgment notwithstanding the verdict—defendants argue that plaintiff failed to prove any negligence on defendants' part which caused, in whole or in part, plaintiff's injuries. If that be the case, defendants continue, then the trial court committed error in failing to grant a judgment notwithstanding the verdict of the jury.

■■ In *Rogers v. Missouri Pacific R.R. Co.* (1957), 352 U.S. 500, 1 L.Ed. 2d 493, 77 S.Ct. 443, an action also brought under the Federal Employers' Liability Act, the Supreme Court had occasion to consider numerous aspects of litigation spawned by employees injured on the job under F.E.L.A., and, in particular, the test of a jury case under the Act. In holding that the test is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the employee's injury, the court, speaking through Mr. Justice Brennan, stated at pages 506-507:

"Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the

employer to pay damages for injury or death due 'in whole or *in part*' to its negligence." (Emphasis in original.)

The instant case is a simple, safe-place-to-work case instituted under the provisions of F.E.L.A., and, in such cases, federal court decisions establish a very broad proposition that railroads have a non-delegable duty to provide their employees with a safe place to work even when the employees are required to go onto the properties of third parties over which the railroads have no control. (*Shenker v. Baltimore & Ohio R.R. Co.* (1963), 374 U.S. 1, 10 L.Ed.2d 709, 83 S.Ct. 1667.) Further, contributory negligence is no defense in a suit brought under the Act's provision. (*Durkin v. Elgin, Joliet & Eastern Ry. Co.* (1956), 12 Ill.App.2d 190, 138 N.E.2d 866.) This proposition is simply a necessary result of the statutory imposition of liability on the employer for injury to the employee caused "in whole or in part" by the negligence of the employer. Hence, in this statutory action, not only is contributory negligence on the part of the employee no defense to a contributorily negligent employer, but rather contributory negligence on the part of the employer imposes liability on that employer.

In the *Durkin* case, a switching foreman employed by the railroad was injured when a "hopper" car on which he was moving collided with a clam bucket moved by an overhead crane above an elevated railroad way located in the yard of a defendant steel company. This court, in holding that the evidence was sufficient in *Durkin* to take the case to a jury on the question of the railroad's negligence in failing to provide a safe place to work, said at page 193:

> "[I]f there was any evidence in the record from which a jury could conclude that defendant's negligence contributed to the plaintiff's injury, a court would err in granting a motion for judgment notwithstanding the verdict. The evidence we consider on the Railroad's contention is that favorable to plaintiff together with the reasonable inferences therefrom which tend to support his case. [Citations.] Only where there is a complete absence of probative facts tending to show negligence should the court take the question from the jury. [Citations.]"

Based upon a reading of the record presented to us, we find that it is replete with evidence which allowed the jury in the court below to draw an inference of defendants' negligence. Defendants' two main arguments in their defense presentation to the jury were that Colonial's premises were so hazardous that plaintiff should have refused to work there, and, in the alternative, that plaintiff should have taken an available, different path in order to accomplish his task. The *relevant* thrust of these contentions in this statutory action is somewhat subtle. On their

face, they might appear to be affirmative defenses of contributory negligences, which defenses are not available in this type of action. But defendants are actually making the contentions in support of their position that they cannot be deemed negligent *in any respect* for their failure to anticipate that their employee (plaintiff) would voluntarily thrust himself into a position of peril into which defendants allegedly did not require him to thrust himself in the performance of his duties for them. In other words, the contentions are being made to support their position that plaintiff's injuries were caused *solely* by his own negligence without *any* contributory negligence on the part of defendants. In this context, while the contentions are legally relevant, suffice it to say that they were heard by the jury and rejected as factually irrelevant in the light of the other evidence in the record to which we have referred, tending to show, at the very least, contributory negligence on the part of the employer.

Defendants' reliance upon *Killian v. Pennsylvania R.R. Co.* (1948), 336 Ill.App. 152, 82 N.E.2d 834, *cert. denied*, 338 U.S. 819 and *Mississippi Export R.R. Co. v. Williams* (Miss. 1972), 266 So.2d 28, is misplaced. Both cases are distinguishable factually from the case before us. In *Killian*, the plaintiff saw the dangerous condition, instructed the Mallory Company employee to move certain barrels, and thereafter, though standing a mere ten to twelve feet away, did not look to see whether the barrels had been moved. There was no negligence on the part of the railroad in *Killian* and plaintiff's contributory [*sic*] negligence was found to be the sole proximate cause of his injury.

The employee who was injured and brought suit in the *Mississippi Export* case labored under a duty, which was his alone, to cut and remove banding wire from railroad crossties; he failed to remove the cut wires, leaving them on the floor of his gondola, and subsequently tripped over them and was injured.

The employees in both *Killian* and *Mississippi Export* were clearly, then, the sole authors of their own misfortune and could not be heard to complain. That cannot be said of the plaintiff in the case at bar.

## II.

As a second argument, defendants assert that plaintiff's counsel was guilty of misconduct which was calculated to deprive and did deprive, defendants of a fair trial. Defendants assign the following examples of what they feel to have been error of a prejudicial nature in the court below: indoctrination of jurors by plaintiff's counsel during *voir dire* examination; the admission into evidence of certain allegations which defendants had made in a lawsuit for contractual indemnity filed against

Colonial Stores; and plaintiff's counsel asking the jury to consider a money award to plaintiff for the plaintiff's wife.

■■ Defendants' first contention concerning the indoctrination of the jury is without merit and that conclusion can .be reached .by a reading of the record filed with the court. Plaintiff's counsel did mention, when questioning the first prospective juror, the fact that this case was a Federal Employers' Liability Act case and started to distinguish it from accident and workmen's compensation cases; objections were made by defendants' counsel, the court admonished plaintiff's attorney to limit himself in giving his descriptive background of the nature of the case, and, except for one other reference to the Act, the attorney followed the court's warning in examining the prospective jurors.

. Defendants refer us to *Osborne v. Leonard* (1968), 99 Ill.App.2d 391, 240 N.E.2d 769 as a case supporting their theory of indoctrination, but the activity of the lawyer involved in *Osborne* is wholly distinguishable from that of plaintiff's attorney here; *Osborne* was concerned with tactics which were extreme, repeated, calculated, inflammatory, and which pervaded the entire case from start to finish. They were tactics to be deplored. A review of the entire jury *voir dire* examination does not disclose any such consistent tactic by plaintiff's lawyer in the case under consideration.

Defendants next claim that they were prejudiced by virtue of the admission into evidence of certain portions of a complaint in a suit filed against Colonial Stores on the basis of contractual indemnity which stated, in substance, that the sole cause of the fall suffered by plaintiff was the presence of snow, ice, and other debris on Colonial's premises. It was plaintiff's contention in the trial court that the language in question constituted an admission. Defendants objected to the admission of the pleadings, and the reading of them to the jury, on the grounds that the jury would be misled into believing that the railroad admitted its liability; that the pleadings did not contain such admissions; that the portions sought to be admitted were simply reallegations of what plaintiff had alleged in his case against defendants; and that the complaint was similar to third-party practice in Illinois. (The pleading in question was filed in the Federal District Court in Ohio.)

˙ On appeal, defendants characterize the complaint filed in Ohio as "alternative pleadings," and call our attention to *Schusler v. Fletcher* (1966), 74 Ill.App.2d 249, 219 N.E.2d 588, to support their position that portions of the Ohio complaint should not have been admitted into evidence in the court below. We held in *Schusler* that the provisions of Illinois' Civil Practice Act authorizing alternative pleading (Ill. Rev. Stat. 1965, ch. 110, par. 43(2)) preclude the admissibility of unverified

alternative pleadings either for purposes of impeachment or as admissions against interest.

In *Schusler*, an allegation in plaintiff's complaint in a dramshop action that defendant was intoxicated was improperly admitted into evidence in an action against defendant for wilful and wanton misconduct for injuries sustained by plaintiff while he was a guest in defendant's automobile. The rationale underpinning our holding in *Schusler* was that because alternative fact allegations, made in good faith and based upon genuine doubt, are not admissions against interest, such pleadings are not admissible in evidence against the pleader. The circumstances of the *Schusler* case do not comport with those presented in the instant matter.

■■ The portion of the Ohio complaint admitted into evidence by the trial court in this case was not an alternative pleading within the meaning and construction of section 43(2) of our Civil Practice Act. The section allows a party in doubt as to which of two or more statements of fact is true to state them in the alternative or hypothetically, regardless of consistency, in the same or different counts or defenses, whether legal or equitable.

■■ The allegation made by defendants in the complaint for contractual indemnity against Colonial Stores—that the sole cause of plaintiff's fall was the presence of snow, ice, and other debris on the company's property—was not an allegation alternative to another pleading therein. On the contrary, it is clear that the allegation was the sole basis upon which defendants sought indemnity from Colonial in the federal court. As such, the allegation constituted an admission against interest made by defendants in the pleadings of another action, which was admissible in evidence, subject to explanation and contradiction. *Chambers v. Appel* (1946), 392 Ill. 294, 307, 64 N.E.2d 511.

Defendants claim further that plaintiff's counsel's references to the possibility of a money award for plaintiff's wife based upon the injuries sustained by plaintiff was part of a deliberate and continuous drive of the attorney for the plaintiff to deprive defendants of a fair trial. We do not find it so.

■■ There is no question that the Federal Employers' Liability Act does not confer upon the wife of an injured railroad employee a cause of action for loss of consortium (*Jess v. Great Northern Ry. Co.* (9th cir. 1968), 401 F.2d 535). While plaintiff's attorney did use language (in the form of what was intended as a hypothetical example, which, under the facts of the instant case, was ambiguous and potentially misleading) which indicated the possibility of an award for loss of consortium for plaintiff's wife, defendants' counsel made a swift objection to the reference, the objection was sustained by the court, and the jury was promptly

instructed to disregard the remarks. From our reading of the record, plaintiff's counsel stood corrected and did not persist further along those lines.

The trial was keenly contested. Each party called numerous witnesses. The experienced and able trial judge patiently considered arguments from each party. The defendants had an adequate opportunity to present their theory and defense. Any errors that occurred, when viewed in the totality of the entire record, were neither substantial nor prejudicial. In summary, then, based upon our review of the entire record, we find that although defendants may not have received a perfect trial, they most certainly received a fair trial. Our supreme court in *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill.2d 69, 199 N.E.2d 769, made the following comments at page 118 of the opinion, and they are strikingly appropriate to the matter at hand:

> "The ultimate question here is not whether the trial was scrupulously free from error, but whether any error occurred which operated to the prejudice of the defendant or unduly affected the outcome below. Considering the evidence which supports the jury's verdict, as well as the law applicable to the alleged trial errors raised here, it is our conclusion that there is no error which would justify a reversal in this case."

### III.

■■ Finally, defendants contend that the court below erred in the manner in which the court instructed the jury, and assign error to two improper instructions. To the first instruction (Illinois Pattern Jury Instructions (Civil) 1961, Instruction 160.08), which read, "It was the duty of the railroad to use ordinary care to provide the plaintiff with a reasonably safe place in which to do his work," defendants insisted upon the addition of this sentence: "This does not mean, of course, that the employer is a guarantor or insurer of the safety of the place to work." The instruction given, without the inclusion of defendants' suggested language, was clear, concise, understandable, and correctly reflected the law based on the facts in this case, and we can see no reason why it should have been supplemented.[2]

---

[2] In conjunction with their contention that the trial court erred in refusing to supplement I.P.I. Instruction 160.08 with the language quoted, defendants request that we note that the following instruction was tendered by defendants and refused on objection:

> "The mere fact that an accident happened, standing alone, does not, unless otherwise expressly stated, permit the jury to draw the inference that the accident was caused by anyone's negligence."

Upon a careful reading of the record, we find that the trial court did not commit error by refusing defendants' offer of this instruction.

*Chicago, Rock Island & Pacific R.R. Co. v. Lint* (8th cir. 1954), 217 F.2d 279, referred to by defendant, involved a personal injury to a train brakeman which arose at the time a freight train crew was spotting a railroad car at an unloading chute. Cattle being unloaded knocked a gate from the hinges. Under the facts of that case, which involved amonst other things questions of the construction and location of a gate, the court held it was error, in that factual situation, not to give defendants requested instruction which would have made it clear the defendant railroad was not an insurer of safety, that liability could not be based on the accident alone, and that liability should turn on the question of whether due care was exercised in providing the equipment furnished under the circumstances. The facts in the instant case are sufficiently different from the *Lint* case facts and in our opinion do not require defendants' requested instruction.

■■ Defendants also objected to the giving of an instruction concerning the inapplicability of the doctrine of assumption of the risk to plaintiff's case (Illinois Pattern Jury Instructions (Civil) 1965, Instruction 160.09). Because the doctrine has been long abolished (*Dilley v. Chesapeake & Ohio Ry. Co.* (6th cir. 1964), 327 F.2d 249), it is no longer necessary to include an instruction concerning the doctrine, the object being to avoid the possible confusion which might result and which might affect the jury's deliberations. That is not to say, however, that the giving of such an instruction is prohibited. The *Dilley* case, upon which defendants rely, does not so hold, but holds, rather, that an assumption of the risk instruction was not needed within the factual circumstances in *Dilley*.

In conclusion, then, we find that there was no error in instructing the jury.

For these reasons, therefore, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS, P. J., and HAYES, J., concur.