Bernice WEESE, Administratrix of the
Estate of Jackson Weese, Deceased,
Plaintiff-Appellee,

v.

CHESAPEAKE AND OHIO RAILWAY
COMPANY, Defendant-Appellant.

No. 76–1425.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1976.

Decided Jan. 23, 1978.

James L. O'Connell, Lindhorst & Dreidame, Cincinnati, Ohio, for defendant-appellant.

Lloyd D. Dooley, Dooley, Heath & Schneider, Milford, Ohio, Frank J. Mackey, Jr., Sidney Z. Karasik, Chicago, Ill., for plaintiff-appellee.

Before PHILLIPS, Chief Circuit Judge, PECK, Circuit Judge, and GRAY,* Senior District Judge.

FRANK GRAY, Jr., Senior District Judge.

Defendant Chesapeake & Ohio Railway Company has appealed the Judgment rendered against it in this Federal Employers' Liability Act case following a jury verdict for plaintiff.

Plaintiff's decedent, Jackson Weese, was an engineer employed by the defendant railroad. In the early morning hours of January 6, 1971, he was operating the lead locomotive of a coal mine train that was making runs in mountainous Pike County, Kentucky. On the run in question, Mr. Weese's train climbed a steep grade to a place called Apex and began its descent down the other side of the mountain. The train required the assistance of three pusher locomotives to reach Apex, but, since this extra power was not needed for the trip downhill, these engines were uncoupled when they reached the crest, at which time Mr. Weese's locomotive, some thirty-five car lengths in front of the pusher engines, had apparently started the descent.

On a normal run on this stretch of track, an engineer was required to stop at a specified place known as the "fifty car marker" to allow retainers to be set for the final descent down the mountain. On the occasion in question, however, Weese's train failed to stop. Instead, it continued to gain speed and eventually derailed on a curve, although a brakeman attempted to apply the emergency brakes. Mr. Weese was found dead in the wreckage.

No autopsy was performed on Weese's body, but the County Coroner, an undertaker, determined that Weese had suffered a crushed chest and massive internal injuries. He then issued a death certificate to that effect.

Following the wreck, Mr. Weese's widow, Bernice Weese, instituted this suit under the FELA, alleging that the railroad had been negligent,[1] and that it had violated the

---

* The Honorable Frank Gray, Jr., Senior Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

1. Plaintiff's negligence claims are premised on 45 U.S.C. § 51, as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin depend-

Boiler Inspection Act,[2] a statute which is "substantively if not in form [an amendment] to the Federal Employers' Liability Act." *Urie v. Thompson,* 337 U.S. 163, 188–89, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949). Mrs. Weese's allegations of negligence may be summarized as follows:

1. It was negligent to uncouple the pusher locomotives from the rear of the train before it stopped to set up retainers.

2. It was negligent not to have a fixed illuminated or reflectorized sign delineating the "fifty car marker."

3. It was negligent for the other members of the train's crew not to act in time to prevent the derailment.

4. It was negligent not to have assigned a fireman to Mr. Weese's crew on the fatal run.

Mrs. Weese charged that the Boiler Inspection Act was violated in that the brakes, sanders, radio, and speedometer on her husband's engine were defective.

At the end of plaintiff's proof and again following the close of all the evidence, the defendant moved for a direct verdict as to each theory of liability. These motions were denied, and the trial judge submitted all of the plaintiff's contentions to the jury. Subsequently, the jury returned a $90,000 general verdict in plaintiff's favor. The defendant's motion for judgment notwithstanding the verdict was denied, and this appeal followed. On appeal the defendant railroad makes three basic assignments of error. The first two of these are, in effect, collections of numerous interrelated contentions.

## I

The first assignment of error is that plaintiff did not adduce sufficient proof to support a jury verdict on any of her theories of liability, and thus that the district judge improperly refused to grant defendant's motions for directed verdict and judgment notwithstanding the verdict. We are of the opinion that this position is without merit.

In FELA actions based on negligence, a plaintiff's verdict is permissible and must be allowed to stand if there is any evidence from which reasonable men could conclude that an employer was negligent, and if there is any evidence that this negligence played some part, however small, in causing injury or death. *Rogers v. Missouri Pacific R.R.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946); *Tennant v. Peoria & Pekin Union Railway Co.,* 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944).

In FELA actions based on the Boiler Inspection Act, whether a jury question is presented is determined in similar fashion. A jury may properly find for a plaintiff if there is any evidence that the alleged defect in the locomotive existed and if there is any evidence of causation. *Gowins v. Pennsylvania R.R. Co.,* 299 F.2d 431, 433 (6th Cir.), *cert. denied,* 371 U.S. 824, 83 S.Ct. 44,

---

ent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

**2.** "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 28 to 30 and 32 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for." 45 U.S.C. § 23.

9 L.Ed.2d 64 (1962); *cf. Urie v. Thompson, supra.* In both types of actions it does not matter that the conclusion that the employer is not liable is equally permissible or even more probable.

Applying this test to the case at bar, the court cannot say that any theory of liability espoused by plaintiff has no evidence to support it. Thus, it is not within our power to overturn the jury's verdict or to say that the defendant's motions should have been granted, either in whole or as to certain theories of liability.

■ The claim that the railroad was negligent in not providing a fireman is the only one of plaintiff's theories that requires further comment. The railroad argues that it cannot be deemed at fault because of this omission since decedent's union did not designate a fireman for the run in question. A previous arbitration award provided that a fireman would be required on only ten percent of all runs but that the union could choose which runs would comprise the ten percent. The award did not preclude the use of a fireman on other runs.

We do not find this claim persuasive. The jury could well have concluded that the run in question was a dangerous one and that the duty of reasonable care required the railroad to provide a fireman thereon, even though it was not so designated by the union.

## II

The defendant's second assignment of error is that the district court erred in his charge to the jury. It is asserted that the trial judge improperly failed to give the numerous proposed instructions offered by the railroad, and that he gave incorrect and incomplete instructions on certain matters.

■ The court may state summarily that the district court's failure to give the railroad's thirty-two proposed instructions does not constitute reversible error. Although some of these proposed instructions are accurate statements of the law, we feel that the charge as given either substantially incorporated them or was adequate without them.

The alleged mistakes in the charge as given require more detailed discussion. The railroad first states that the district court erred in charging the jury that it could find liability under plaintiff's theories of negligence if it found that there was a causal connection, however, small, between Mr. Weese's death and a negligent act, and that it could find liability under the Boiler Inspection Act if it found this same causal relationship between a locomotive defect and death. We cannot accept the railroad's contention. Although it is argued that the "however small" test is to be used only in deciding whether to submit the case to the jury and not in charging them, we do not find this argument persuasive. *See: Morrison v. New York Central R.R.,* 361 F.2d 319 (6th Cir. 1966).

■ The railroad's next contention is that, since assumption of the risk was not here at issue, it was error for the district court to give the following charge:

"Unless you are instructed on the point, some of your number might think that a railroader assumes the risk of danger and the plaintiff's decedent assumed the risk of danger when he worked as an engineer; he did not. A section of the FELA provides that: '. . . employees of the railroad shall not be held to have assumed the risk of his employment in any case where such injury resulted in whole or in part from the negligence of any of the officers, agents or employees of such carrier.' That is the end of the quote."

Two cases from this Circuit, *Dilley v. Chesapeake and Ohio Railway Co.,* 327 F.2d 249 (6th Cir.), *cert. denied,* 379 U.S. 824, 85 S.Ct. 47, 13 L.Ed.2d 34 (1964), and *Gowins v. Pennsylvania Railroad Company,* 299 F.2d 431 (6th Cir.), *cert. denied,* 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962), are cited to support the proposition that such a charge is improper.

In *Dilley* we noted in *dictum,* in a case being remanded for other reasons, that an assumption of the risk charge should not be

given. In *Gowins* we merely held that a plaintiff cannot demand such a charge.

In the case at bar we are of the opinion that this instruction, if error, was harmless and does not constitute ground for reversal.

■ The railroad's final objection to the charge as given is the assertion that the district judge did not instruct the jury clearly that the same standard of causation should be applied to both negligence and contributory negligence. In other words, the defendant says that the trial judge did not point out that, under the rules of comparative negligence applicable to this case,[3] even the slightest contributory negligence could reduce the amount of their award.[4]

The court's charge was, in pertinent part, as follows:

"Section 3 of the Federal Employers' Liability Act provides in part, quote, 'In all actions . . . brought against any . . . common carrier by railroad . . . to recover damages for personal injuries to an employee, . . . the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.' That is the end of the quote.

"So, if you should find from a preponderance of the evidence in the case that the defendant was guilty of negligence which caused in whole or in part any injury or damage to the plaintiff's decedent, and should further find from a preponderance of the evidence in the case that the plaintiff's decedent, himself, was

guilty of some contributory negligence which contributed in whole or in part toward bringing about his own injury, then the total award of damages to the plaintiff must be diminished or reduced in the proportion that the amount or percentage of fault or contributory negligence chargeable to the plaintiff's decedent compares to the amount or percentage of fault or negligence chargeable to the defendant."

We think that the charge sufficiently advised the jury of the rules of causation that it should use concerning decedent's contributory negligence and that no reversible error was committed.

### III

■ The railroad's final assignment of error is that the district court erred in admitting Mr. Weese's death certificate into evidence. It is argued that, since the certificate was not issued by a physician, plaintiff was allowed to introduce unreliable opinion evidence concerning the cause of death. As noted above, the certificate stated that death resulted from massive internal injuries and a crushed chest.

It is not argued that the certificate was not admissible to prove the facts stated therein. The trial judge instructed the jury accordingly, using the following language:

"The death certificate was admitted in evidence. It is Plaintiff's Exhibit C. Under the law, such death certificate is prima facie evidence of the facts stated therein. Prima facie evidence means evidence which alone is sufficient to estab-

**3.** 45 U.S.C. § 53 establishes the principles of comparative negligence applicable to FELA cases. The Section provides:

"§ 53. . . .

"In all actions on and after April 22, 1908 brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the

amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

**4.** This court has held previously that in FELA negligence actions an employee's contributory negligence must be judged by the same standards as his employer's negligence. *Ganotis v. New York Central R.R. Co.,* 342 F.2d 767 (6th Cir. 1965).

lish the existence of a fact or facts in the absence of evidence in the case which leads the jury to a different or contrary conclusion."

We do not think that reversible error was committed because the trial judge did not analyze the certificate and tell the jury which portion constituted "facts stated therein" and which portion, if any, was a statement of opinion.

The judgment is AFFIRMED.