**OTIS McALLISTER EXPORT COR-
PORATION**

v.

**GRANCOLOMBIANA (NEW YORK),
INC., Flota Mercante Grancolombiana,
S. A., and the M/S AGGERSBORG.**

No. 4397.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 17, 1963.

Normann & Normann, Hugh M. Glenn, Jr., David R. Normann, New Orleans, La., for libelant.

Terriberry, Rault, Carroll, Yancey & Farrell, Benjamin W. Yancey, M. D. Yager, New Orleans, La., for respondent, Flota Mercante Grancolombiana, S. A.

AINSWORTH, District Judge.

This is a claim for cargo damage in the sum of $2,175.50 by libelant, a shipper, against respondent carrier and the M/S AGGERSBORG. Grancolombiana (New York), Inc. was dismissed by order of the court. The cargo, consisting of 34 skids of corrugated galvanized steel, was alleged to be damaged by sea water causing "white rust" to appear thereon.

The cargo, which had arrived at New Orleans, Louisiana, via barge, was loaded aboard the M/S AGGERSBORG on April 19, 1959 for shipment to Puerto Barrios, Guatemala, with ultimate consignment to Guatemala City. The bill of lading contained no exceptions and incorporated by reference the Carriage of Goods by Sea Act of 1936. The shipment arrived at Puerto Barrios on April 18 and was discharged to open railway flat cars for shipment to Guatemala City. The cars arrived at Guatemala City on April 28, May 6 and May 8. On May 20 the cargo was delivered to consignee's warehouse in Guatemala City. Two days later a survey was made showing traces of white powder on the steel sheets. On June 11 a sample of the steel was sent to Alfreda Mendez Zebadua, chemical engineer, for analysis, who reported damage due to sea water. At the request of consignee a certificate of damage was made on July 8, 1959, signed by Jaime F. Cienfuegos, surveyor, showing damage as

estimated by the consignee to be $1,946.-24, or 10% of the value of the shipment.

The report on "Over, Short and Damaged Cargo" made at Puerto Barrios shows "All bundles outturned with edges bent"; the railroad waybills confirm this condition but further show that the contents of the bundles were not inspected and their condition was unknown. The claim pertains only to the "white rust" damage allegedly caused by sea water.

Zebadua, the chemical engineer who examined a sample of the damaged steel, stated that the damage was caused by sea water. He described the test which he used to verify his statement. Shilstone, also a chemical engineer, said in his opinion the test conducted by Zebadua was insufficient to establish the presence of sea water; that at most a conclusion of damage by salt water or salt water contamination could be reached; that inasmuch as the test only showed that chlorides were found, it was not conclusive; that the presence of chlorides could be attributed to various causes other than sea water damage or salt water damage.

Bernt Forsberg, former Chief Officer of the M/S AGGERSBORG, remembered the voyage from New Orleans to Puerto Barrios; that it was performed under fine and normal conditions; that his recollections were supported by the ship's log; that he had no independent recollection of personally witnessing the storage of the 34 skids of steel sheets, but that no irregularities were reported to him in connection therewith; that no cargo whatsoever came into contact with sea or salt water during the voyage; that it was absolutely impossible in his opinion for the sheets to be exposed to sea or salt water while in the custody of the AGGERSBORG; that the hatches were closed and battened down for the entire voyage; no ventilation was used; that chicken feed which was stowed on top of both parcels of steel sheets was discharged without damage.

■ The clear bill of lading created a presumption that the cargo was in good condition at the time of loading [1]. However, libelant has failed to establish that the cargo was in a damaged condition when discharged from the M/S AGGERSBORG, proof of which is essential to establish a case of prima facie liability.[2] This burden of proof is met "only when the condition of the goods on outturn is utterly inconsistent with the represented apparent good condition at the time of loading."[3] The bundles were not inspected and their condition was unknown at outturn. The rust damage was not noticed until approximately a month subsequent to the carrier's discharge of the goods. Libelant's failure to give notice of damage at the port of discharge before or at the time of the removal of the goods, creates prima facie evidence of the delivery by the carrier of the cargo in good condition,[4] which presumption was not adequately rebutted by libelant.

■ On the other hand, respondent has shown that there was no negligence or lack of due diligence on its part; that there was no possibility of sea water coming in contact with the cargo; that there were no irregularities or incidents which could have caused the white rust on the steel sheets. The record is bereft of evidence as to the causation of the claimed damage, when it occurred, where it occurred, or that respondent was in any way responsible. Libelant has therefore failed to establish liability. Decree will be entered accordingly.

1. 46 U.S.C.A. § 1303(4); Kupfermann v. United States, 2 Cir., 1955, 227 F.2d 348.

2. California Packing Corp. v. States Marine Corp. of Del., N.D.Cal., 1960, 187 F.Supp. 540; Copco Steel & Engineering Co. v. The Prins Willem Van Orange, E.D.Mich., 1957, 159 F.Supp. 79.

3. Hecht, Levis & Kahn, Inc. v. Steamship Buchanan, 2 Cir., 1956, 236 F.2d 627.

4. 46 U.S.C.A. § 1303(6).