**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**LYKES BROS. STEAMSHIP CO., Inc., in personam, and the SS THOMPSON LYKES, her engines, tackle, etc., in rem, Defendants-Appellees.**

No. 27717.

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1970.

SON LYKES (Lykes), delivered three shipments of bagged wheat flour and corn meal at the port of Kunsan, Korea in October, 1966, in a wet and damaged condition. At the trial the government attempted to establish a prima facie case by showing, with documentary evidence only, that Lykes received the cargo in good order and condition and discharged the same in a damaged condition caused by the failure of Lykes to properly care for it. The district judge having ruled as inadmissible each document submitted by the government to prove the cargo was discharged in damaged condition, there was no evidence to support a prima facie case and judgment was entered for Lykes. We hold that several of the documents were erroneously excluded and accordingly we reverse and remand for further proceedings.

 As to the admissibility of evidence, we emphasize at the outset that the liberal construction properly given Rule 43(a), F.R.Civ.P., favors admission of evidence rather than its exclusion if it is of probative value and that generally doubts should be resolved in favor of admissibility. Butler v. Southern Pacific Company, 5 Cir. 1970, 431 F.2d 77. We further note the particular applicability of such a construction in admiralty cases which are tried by a judge without a jury.[1] The documents proffered by the government to show that the cargo was delivered in a damaged condition, and excluded by the district judge consisted of an Over, Short and Damage Report (OSD Report), a Survey Report, three Cargo Boat Notes, an Out-turn Report and a Certificate of Condemnation. Various Phytosanitary Reports purporting to show that when the cargo was loaded it was free of injurious diseases and pests and in good condition were also excluded. Three Bills of Lading, apparently allowed in evidence without objection,[2] indicated the quantity and type

William D. Ruckelshaus, Asst. Atty. Gen., Louis C. LaCour, U. S. Atty., Alan S. Rosenthal, Raymond D. Battocchi, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Benjamin W. Yancey, M. D. Yager, New Orleans, La., for defendants-appellees; Terriberry, Carroll, Yancey & Farrell, New Orleans, La., of counsel.

Before AINSWORTH, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The United States, plaintiff-appellant, appeals the judgment of the court below which denied the government relief on its claim for damages allegedly incurred when appellee, Lykes Bros. Steamship Co., Inc., and its vessel the SS THOMP-

---

1. See 3 Benedict on Admiralty, Sixth Edition, Section 381b, page 5.

2. The objection by Lykes, reserved until the government had proffered all of its documentary evidence, contained no reference to the bills of lading, nor did the court in its opinion or in the record exclude them.

of the goods delivered to Lykes for shipment and contained no exceptions as to their "apparent good order and condition".

We follow the above order in considering these documents. First, regarding the OSD Report and Survey Report, it is undisputed that each was prepared by an agent of Lykes. The government contends that the reports constitute admissions by Lykes' agents and as such are admissible the same as Lykes' own admissions would be. In holding these reports inadmissible, the lower court emphasized that in this case the agents' authority allowed them only to report *to* their principal (Lykes) and stated that only if the principal authorized the agent to speak to third persons *for* him can he make no valid exception to the reception of the agent's statements against him.

█ Admittedly, the law is unsettled as to whether an agent's statement, made within the scope of authority, but made only to the principal himself, is admissible against the principal as an admission. Professor McCormick notes that many courts would refuse to admit it while an equal number would let it in. McCormick, Evidence § 78, page 160, and cases cited. The cases relied on by the lower court as to this point include Dilley v. Chesapeake & O. Ry. Co., 6 Cir. 1964, 327 F.2d 249, cert. den. 379 U.S. 824, 85 S.Ct. 47, 13 L.Ed.2d 34 (1964); Standard Oil Company of California v. Moore, 9 Cir. 1957, 251 F.2d 188, cert. den. 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958); Nuttall v. Reading Company, 3 Cir. 1956, 235 F.2d 546. Although the above cases from other circuits support the holding of the district court, we adhere to the law as declared by this circuit. In Brown and Root, Inc. v. American Home Assurance Co., 5 Cir. 1965, 353 F.2d 113, the report of a marine surveyor hired to investigate and report to the principal as to the cause of the grounding of a barge was allowed in

evidence as an admission of the principal. In Compagnie De Navigation, etc. v. Mondial United Corp., 5 Cir. 1963, 316 F.2d 163, the court, again sitting in admiralty, and holding the report of a surveyor made to his principal regarding the amount of damage to cargo admissible as an admission, stated:

"We do not rest this on a holding that the surveyor had authority to make any binding agreement as such. Rather it is a classic case of an admission in its true sense. The law of admissions is primarily the law of agency, not evidence. The surveyor was hired to inspect and *report* his conclusions and recommendations. In reporting he was doing exactly what he was employed to do. Since part of his acts were to be reported *words,* his statement was within his authority. As such it is admissible as an admission from which the trier could draw inferences." (Emphasis supplied)[3] 316 F.2d at 171, n. 10.

We hold that the OSD Report and the Survey Report here involved should have been allowed into evidence.

█ We next consider the district court's exclusion of the three cargo boat notes. The court, after commenting that the notes did not indicate when they were prepared or from what sources of information they drew, stated: "the court is unable from examining these 'Cargo Boat Notes' to determine the nature of the documents, their purpose, by whom they were prepared or for whom they were prepared". Each note identifies the cargo and sets out the kind and extent of damage. On two of the notes appear three signatures identified by typed lettering as "Chief Checker, SS Thompson Lykes V-31 in Port of Kunsan, Korea", and "Representative, Korea Express Co., Ltd., Kunsan Korea". The signatures are the same for the third except that the signature for the "Thompson Lykes" is identified as the

---

3. In this case, joint surveys were made by surveyors representing the consignee and the carrier. Though they were in substantial agreement, it appears that each reported separately his findings to his respective principal.

"Master or Chief Officer".[4] Despite a liberal construction of Rule 43(a) and the several arguments advanced by the government that these notes constituted exceptions to the hearsay rule, we are constrained to agree with the trial judge. As it was pointed out, an examination of the notes does not reveal either when they were prepared, by whom they were prepared, for whom they were prepared, or from what source of information they drew. The notes therefore, of themselves, do not overcome the lack of a proper foundation which the government otherwise failed to provide. Upon retrial the lower court should allow the United States an opportunity to remedy this deficiency by further proof of authenticity.

We now turn to the several documents certified by the Department of Agriculture as being authenticated government documents. These consisted of an out-turn report, a certificate of condemnation and various phytosanitary reports, all offered in evidence as official records under Title 28, U.S.C., § 1733, the government records statute.[5]

The out-turn report and the certificate of condemnation were prepared by Korean officials and purport to show that a portion of the goods were received in a damaged condition and declared unfit for human consumption. In holding these reports inadmissible the lower court stated:

"The Regulation requiring the furnishing of a report by the cooperating sponsor cannot be construed as giving the Korean officials in this case who made the reports any *official status* vis a vis the Government of the United States as to this specific duty. The documents were not prepared pursuant to any *official* duty. They, therefore, cannot be regarded as official records of this Government." [6]

The court recognized that in this case the cooperating sponsor was the Republic of Korea.

If the regulation instead required that USAID prepare its own report there would be no question that it would be the report of a "department or agency of the United States." Likewise, we have no doubt that the duty to prepare the report can be delegated, under government regulations, to an independent agency or to a foreign government without the

4. This portion of the note is obscured making it impossible to determine which person, if either, signed it.

5. This section provides:
"(a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept.
"(b) Properly authenticated copies of transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof."

6. Regarding the Out-turn Report, 22 C.F.R. 211.6(f) (1967 ed.), substantially re-enacted in 22 C.F.R. 211.9(c) (1) (i) (1970 ed.), provided in part:
"The cooperating sponsor shall furnish USAID or the Diplomatic Post with an out-turn report on each shipment."
As to the Certificate of Condemnation, 22 C.F.R. 211.6(q) (1967 ed.) substantially re-enacted in 22 C.F.R. 211.10(a) and (b) (1970 ed.,), provided in part:
"Cooperating sponsors shall maintain records and documents in a manner which will accurately reflect all transactions pertaining to the receipt, storage, and distribution of commodities * *. Cooperating sponsors shall submit to USAID or the Diplomatic Post: (1) Periodic reports concerning the arrival, receipt, and distribution of commodities in foreign countries * * *."
and 22 C.F.R. 211.8(a) (1967 ed.), substantially re-enacted in 22 C.F.R. 211.9(c) (1) (i) (1970 ed.), provided in part:
"If after delivery to the cooperating sponsor it appears that the commodity, or any part thereof, may be unfit for the use authorized in the Transfer Authorization, the cooperating sponsor shall immediately arrange for inspection of the commodity by a public health official or other competent authority approved by USAID or the Diplomatic Post. If, after inspection, the commodity is determined to be unfit for authorized use, the cooperating sponsor shall notify USAID or the Diplomatic Post of the circumstances pertaining to the loss or damage * * *."

report losing its character, when submitted through the appropriate United States agency, as a report of a "department or agency of the United States". We therefore hold that the reasoning employed by the district court in excluding the out-turn report and the certificate of condemnation would unnecessarily frustrate a liberal application of Rule 43(a), and that these reports should have been admitted.

As to the three phytosanitary reports, there was no reason given for their exclusion. They were prepared by the Plant Quarantine Inspector of the Department of Agriculture and were proffered to show that the cargo was free of injurious diseases and pests and therefore in good condition when loaded. Though the government does not contend that the cargo was disease or pest ridden, the reports at least show the quantities of goods delivered for shipment. We find these reports squarely within the ambit of § 1733 and therefore hold that the lower court erred in excluding them.

Based on the above determinations, we conclude the government did in fact establish a prima facie case and that it was error to enter judgment for Lykes. The case should be reopened for Lykes to present its defenses.

The decision of the lower court is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Before AINSWORTH, DYER and SIMPSON, Circuit Judges.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.