**UNITED STATES of America**

v.

**CENTRAL GULF LINES, INC., et al.**

**Civ. A. No. 81–3339.**

United States District Court,
E.D. Louisiana.

Dec. 2, 1983.

Roy F. Blondeau, Jr., Asst. U.S. Atty., New Orleans, La., for plaintiff.

John J. Broders, New Orleans, La., for defendants.

## OPINION AND ORDER

McNAMARA, District Judge.

The United States of America brings this action under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–1315, to recover for shortages in a consignment of refined soybean oil loaded aboard the S/S GREEN ISLAND in New Orleans and discharged in Kandla, India.

## I. FACTS

Under a bill of lading issued on October 24, 1979, by Central Gulf Lines, Inc., owner of the S/S GREEN ISLAND, 18,466 drums of soybean oil were shipped by the Commodity Credit Corporation (CCC), an agency of the United States, to the representative of the Cooperative League of the United States of America (CLUSA) in India. The oil was to be distributed throughout India by the National Development Dairy Board, under the auspices of the Food For Peace Program, 7 U.S.C. § 1721.

The bill of lading certifies that the cargo was received "clean on board" the GREEN ISLAND, a LASH-type vessel. Upon arrival of the vessel in the Port of Kandla on December 1, 1979, discharge by stevedores of the Kandla Port Trust commenced soon thereafter and was completed by February 23, 1980.

At the request of CLUSA, the cooperating sponsors, the discharge was attended by J.B. Boda, Ltd., marine surveyors. The Boda survey report indicates that 109 drums were short-landed. A short-landing certificate issued by the Kandla Port Trust corroborates the survey report.

Nonetheless, Defendant-carrier asserts that the shipper's action for the value of the short-landed cargo must fail for two reasons: (1) the documents necessary to establish the shipper's *prima facie* case under COGSA are inadmissible, and (2) the United States is not the proper party plaintiff.

## II. ADMISSIBILITY OF DOCUMENTS

■ At trial, the Court took under advisement the admissibility of several documents which are crucial to shipper's ability to carry its burden of proof—the short-landing certificate and the cargo survey reports. The shipper establishes a *prima facie* case of carrier liability under COGSA for shortage or damage by proving: (1) The carrier received the cargo in good condition, as evidenced by a "clean" bill of lading, and (2) At the port of destination outturned an amount less than that declared on the bill of lading, as evidenced by the shortlanding certificate or cargo survey reports. COGSA, 46 U.S.C. § 1303(4); *Associated Metals and Minerals Corp. v. M/V RUPERT DE LARRINAGA*, 581 F.2d 100, 101 (5th Cir.1978); *Otis McAllister Export Corp. v. Grancolombiana (New York), Inc.*, 216 F.Supp. 756, 757 (E.D.La.1963).

The carrier asserts that the shipper cannot carry the requisite burden of proof because the documents necessary to prove a shortage—either the short-landing certificate or survey reports—are inadmissible as hearsay. These documents, contends Central Gulf, are not public records of the United States under Federal Rule of Evidence 803(8)[1], nor are the documents admissible as business records under Rule 803(6)[2], because there was no identification

---

**1.** Rule 803(8) provides in pertinent part:
*Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ... or (C) in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of

trustworthiness [are not excluded by the hearsay rule].

**2.** Rule 803(6) provides in pertinent part:
*Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum,

testimony from an employee of the office that prepared the suspect documents. Whether labeled "business records" or "public records", I find that the documents are admissible.

The only witness at trial was Thomas W. Bell, the Chief of Claims and Collections for the Department of Agriculture, and contracting officer and assistant treasurer for the CCC. Bell's duties include supervision over the filing, pursuit, and adjudication of ocean transportation claims which arise from the activities of these agencies. Significantly, he is also the custodian of the documents in question.

*Business Records*

■ That these documents are kept "in the course of a regularly conducted business activity" is not disputed. *See* Rule 803(6). Indeed, by statute, the CCC is required to compile and retain such documents.[3]

However, Central Gulf argues that these documents are inadmissible as business records because the CCC did not prepare them. Contrary to the contention of Central Gulf,

> Rule 803(6) does not require that the records be prepared by the business which has custody of them. Where circumstances indicate that the records are trustworthy, the party seeking to introduce them does not have to present the testimony of the party who kept the record or supervised its preparation. Testi-

mony by the custodian of the record or other qualified witness that the record is authentic and was made and kept in the regular course of business will suffice to support its admission.

*United States v. Veytia-Bravo,* 603 F.2d 1187, 1191–92 (5th Cir.1979), *rehearing en banc denied* 607 F.2d 1006, *cert. denied,* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980). *See also Mississippi River Grain Elevator v. Bartlett & Co., Grain,* 659 F.2d 1314, 1318–19 (5th Cir.1981); *United States v. Ullrich,* 580 F.2d 765, 771–72 (5th Cir.1978), *rehearing en banc denied,* 589 F.2d 1114 (1979). Thus, the testimony of Thomas Bell laid the proper foundation for introduction of these documents under Rule 803(6).

*Public Records*

■ Although the short-landing certificate and survey reports were prepared by foreign entities, the decision of *United States v. Lykes Bros. Steamship Co.,* 432 F.2d 1076 (5th Cir.1970) mandates that these documents also be considered public records of the United States within the meaning of Rule 803(8). In *Lykes Bros.,* the Fifth Circuit Court of Appeals determined that an out-turn report and certificate of condemnation prepared by Korean officials were admissible as government documents in order to establish a *prima facie* case under COGSA. The Court reasoned that under the pertinent government regulations,[4] the duty to prepare the report

---

> report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness [is not excluded by the hearsay rule].

**3.** 22 C.F.R. § 211.9(c) provides in part:
> Ocean carrier loss and damage—Survey and outturn reports. (i) Cooperating sponsors shall arrange for an independent cargo surveyor to attend the discharge of the cargo and to count or weigh the cargo and examine its condition, unless USAID or the Diplomatic Post determines that such examination is not feasible, or if CCC has made other provisions for such examinations and reports. The surveyor shall prepare a report of his findings showing the quantity and condition of the commodities discharged. The report shall

also show the probable cause of any damage noted, and set forth the time and place when the examination was made. If practicable, the examination of the cargo shall be conducted jointly by the surveyor, the consignee, and the ocean carrier, and the survey report shall be signed by all parties. Customs receipts, port authority reports, shortlanding certificates, cargo boat notes, stevedore's tallies, etc., where applicable, shall be obtained and furnished with the report of the surveyor.

**4.** The pertinent government regulations in *Lykes Bros.* are substantially the same regulations that now appear at 22.C.F.R. § 211.9(c) (1983). *See* note 5, *supra.* Rule 803(8) contemplates the admissibility of records prepared pursuant to "duty imposed by law" or "factual findings resulting from an investigation made pursuant to authority granted by law." *See* note 1, *supra.*

can be delegated to an independent agency or foreign government, without the report losing its reliable character, when submitted through the appropriate United States agency, as a report of a department or agency of the United States. *Id.* at 1079–80.

In the instant case, the short-landing certificate and cargo surveys prepared in compliance with government regulations are likewise sufficiently reliable to justify treatment as "public records". In fact, the reliability and trustworthiness of the evidence is enhanced by relying on the survey report of an independent expert, rather than the report of a survey conducted by the agency itself.

■ Tenaciously, Central Gulf argues that even if the documents are public records, they are still inadmissible because they were not properly "authenticated". "[A]uthentication of the documents merely establishe[s] their authorship, the proof of some human's 'personal connection with a corporal object'". *Rhoads v. Virginia-Florida Corp.*, 476 F.2d 82, 85 (5th Cir. 1973), *after remand* 549 F.2d 985 (1977).

By way of example, Rule 901(b)(7) explains that:

> [T]he requirement of identification as a condition precedent to admissibility is satisfied by evidence … that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record … is from the public office where items of this nature are kept.

Again, the uncontroverted testimony of Thomas Bell, the custodian of the documents, serves to "authenticate" these documents. *See Sternberg Dredging Co. v. Moran Towing & Transport Co.*, 196 F.2d 1002, 1005 (2d Cir.1952), *rehearing denied* 200 F.2d 603; *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 505 F.Supp. 1190, 1223–24 (E.D.Pa.1980); *McCormick on Evidence* § 191 (1954).

---

**5.** The authorization for transfer of the commodities from the CCC to CLUSA provides at Paragraph K:

## III. PROPER PARTY?

■ Relying on *United States v. Central Gulf Lines, Inc.*, 699 F.2d 243 (5th Cir.1983), a decision involving the S/S GREEN VALLEY, sistership of the GREEN ISLAND, the defendant-carrier contends that the proper party to bring a claim for shortage is CLUSA—the consignee—and not the CCC, through the United States. The above cited case is distinguishable for a number of reasons.

In *Central Gulf Lines*, another United States agency, the Agency for International Development, transferred the title to consignments of urea to the South Vietnamese government *prior* to the shipment of the urea to Saigon. The transaction was characterized as a "loan". *Id.* at 244. A survey of the cargo during discharge revealed a shortage, and the United States made demand on Central for the value of the missing urea. The court disallowed any claim on behalf of the United States for the value of the missing urea, because the South Vietnamese interests had title to the cargo at the time of shipment. Thus, the court reasoned:

> [T]he United States, because it was not the owner of the missing urea, received no assignment of claim by the owner, and enjoyed no guarantee of loan payment by Central, has no interest entitling it to recover from Central the value of the urea.

*Id.* at 245.

Conversely, in the instant case, the United States retained ownership of the missing soybean oil until received by the consignee, CLUSA.[5] Since CLUSA never received the cargo in question, CLUSA never possessed title to it.

Furthermore, 22 C.F.R. § 211.-9(2)(i)(1983) grants a statutory assignment

Title to goods shall pass to CLUSA FAS vessel (*i.e., ex-ships tackle*), port of entry, India. CLUSA shall transfer Title to said cargoes at that time to NDDB (emphasis added).

of claim when the CCC ships commodities under the Food for Peace Program.[6]

Finally, in *Central Gulf Lines,* the United States was *not* a signatory to the contract of carriage. 699 F.2d at 245. In the case at bar, the United States, through the CCC, is a signatory to the contract of carriage, the breach of which forms the basis of this suit. *See also United States v. Waterman Steamship Corp.,* 471 F.2d 186, 189 & n. 4 (5th Cir.1973), wherein the signatory to the bill of lading was CARE, a private organization.

## IV. LIABILITY

■ In a case controlled by COGSA, the placement of the burden of proof is crucial. *Socony Mobil Oil Co. v. Texas Coastal & International, Inc.,* 559 F.2d 1008, 1010 (5th Cir.1977). The United States has proved that the carrier is *prima facie* liable under COGSA for the short-landed cargo by production of the bill of lading, cargo surveys and short-landing certificate. As such, the burden of proof shifts to the carrier to establish an exoneration from liability. *Tapco Nigeria, Ltd. v. M/V WESTWIND,* 702 F.2d 1252, 1259 (5th Cir. 1983); *Blasser Brothers v. Northern Pan American Line,* 628 F.2d 376, 381–82 (5th Cir.1980).

■ The carrier contends that the shipper failed to provide notice of loss within three days after discharge, "thereby creating '*prima facie* evidence of the delivery by the carrier of the goods as described in the bill of lading.'" *Associated Metals,* 581 F.2d at 107, quoting 46 U.S.C. § 1303(6). However, this defense will not save the day. In the Cargo Booking Confirmation, Central Gulf waived the requirement of notice of loss.[7] Moreover, failure to give notice will not overcome the evi-

dence produced by the shipper proving that 109 drums less of soybean oil were short-landed. The presumption of good delivery established by 1303(6) "is conclusive only where there is no other evidence on the disputed point." *Socony Mobil Oil Co.,* 559 F.2d at 1012. *See also Jamaica Nutrition Holdings v. Great Circle Shipping, Inc.,* 433 F.Supp. 1067, 1071 (S.D.Ala.1977).

The failure to rebut the *prima facie* case established by the United States results in the carrier's liability for the value of the short-landed cargo. *Blasser Bros.,* 628 F.2d at 382.

## V. DAMAGES

■ As a result of the short-landing, I find 54,128 pounds of soybean oil were not delivered. There is no established market value for soybean oil in the destination country. Thus, a fair method of calculating the loss is to divide the pounds of shortage by the total pounds of the shipment and multiply that dividend by the sum of the commodity value of the entire shipment at FAS loading port plus the amount of freight paid to move the entire shipment from loading port to discharge port. Using this methodology, the loss is .456589 per pound, or a total of $24,714.25.

■ Additionally, because the Commodity Credit Corporation is funded through loans from the United States Treasury with interest rates based on outstanding treasury obligations, I find the interest paid to the treasury by Commodity Credit Corporation from August 1980 to the date of judgment should be included herein. Government Exhibit No. 22 reflects the monthly rates of interest paid by Commodity Credit Corporation from August 1980 (the month

---

**6.** The regulation provides:
(2) Claims against ocean carriers. (i) Irrespective of transfer of title to the commodities, CCC shall have the right to initiate and prosecute, and retain the proceeds of, all claims against ocean carriers for cargo loss and damage or cargos for which CCC contracts for ocean transportation.

**7.** Paragraph 13 of the Cargo Booking Confirmation provides:

In case of claims for loss, damage, or shrinkage in transit, or any other claims against the carrier, the rules and conditions governing commercial shipments and the provisions of the Carriage of Goods by Sea Act of 1936 shall not apply as to period within which notice thereof shall be given the carriers or to period within which claim therefore shall be made or suit instituted.

following the filing of a claim against Defendant herein) through June of 1983 (the month preceding the trial herein). The exhibit also contains a column reflecting a monthly interest amount but the monthly interest amount is slightly inaccurate because it is based on a claim slightly in excess ($24,717.82 vice $24,714.25) of the amount of damages actually sustained as set forth in this opinion. Furthermore, Government Exhibit No. 22 does not set forth interest calculations for the months of July through November 1983. These amounts must also be calculated in the prejudgment interest.

Accordingly, let there be judgment herein in favor of the United States of America and against Central Gulf Lines, Inc. in the amount of $24,714.25 plus interest thereon calculated utilizing the rates of interest set forth in Government Exhibit No. 22 plus the additional interest to be calculated by utilizing the monthly rates of interest for the months July 1983, through November 1983, charged by the United States Treasury to Commodity Credit Corporation.

Counsel for the United States of America, shall, within ten (10) days of this date, obtain the monthly rates of interest charged to the Commodity Credit Corporation by the United States Treasury for the months July through November and correctly calculate the total interest charge on the amount awarded herein, $24,714.25, and submit that calculation to counsel for Defendant for his concurrence *vel non* of the monthly rate of interest utilized for the months July 1983 through November 1983 which are not reflected in Government Exhibit No. 22. If counsel for Defendant does not concur that the July 1983 through November 1983 interest rates are accurately set forth, counsel for Defendant will notify the Court no later than fifteen (15) days from the date of this judgment. Failing to receive such notification from counsel for Defendant, counsel for the United States will prepare a judgment in conformity with the findings herein.